ELLERY DAVIS, APPELLEE, v. HIGHWAY MOTOR UNDERWRITERS, APPELLANT.

FILED FEBRUARY 27, 1931. No. 27551.

*Allen & Requartte* and *O. C. Wood,* for appellant.

*H. W. Baird* and *Hall, Cline & Williams, contra.*

Heard before Goss, C. J., Rose, Dean, Good, Eberly, Day and Paine, JJ.

Goss, C. J.

This is an action to reform a public liability automobile insurance policy and to recover upon the policy as reformed. The case was assigned to an equity court and tried to a judge without the intervention of a jury. From a decree reforming the policy and entering judgment against the defendant this appeal was taken.

The defendant, Highway Motor Underwriters of Kansas City, Missouri, is a reciprocal insurance exchange, authorized under chapter 44, art. 15 (sections 44-1501 to 44-1513) Comp. St. 1929, to write such an insurance contract as is involved here. A. R. Talbot Underwriters, Inc., of Lincoln, is its attorney in fact in this jurisdiction and state. Richard L. Kimball of Lincoln, is defendant's general manager, for the whole company, and is also secretary for its attorney in fact. The defendant has two agencies in Lincoln, the Stuart Investment Company and Lincoln Insurance Service, who take applications for insurance. All policies are issued from defendant's office in Lincoln. Lincoln Insurance Service is composed of Don A. Chapin and Leo Scherer.

Plaintiff purchased a new automobile about the middle of August, 1928, and on August 16 was solicited by Mr. Scherer to insure it. Plaintiff told Scherer he wanted a policy with limits of $25,000 and $50,000, with coverage for his son, who would be 16 in a few months. Plaintiff testified that Scherer said "he would take care of it, and that there would be no extra premium as it was only a few months." Scherer testified: "He asked if we could put an indorsement on this policy covering this boy, and I told him that I had never written that kind of a policy before, but I would see if we could not get that coverage." Scherer went directly to Mr. Kimball and told him the kind

of coverage Mr. Davis wanted. The general manager testified that he told Scherer he did not know whether or not the company could legally issue such a policy, but he would consider it and let him know later; but that he never did tell him definitely whether he could issue a policy with such a rider. Kimball says: "I knew what he (Davis) wanted. I didn't know what he expected to get."

The policy was written without the rider and was delivered by Scherer, who was under the impression that it contained the coverage requested by the insured. It was delivered at the office of Mr. Davis in his absence, and when he returned he put it in a pigeonhole without reading it. He paid the premium on the first of September and did not discover that the policy lacked the rider until after the loss in October. The defendant denied liability and kept the premium. The evidence indicates that the defendant could have written such a policy as plaintiff thought he had, but did not do so because of difficulty of reinsuring the risk, and that it was willing, after the loss occurred, to attach such a rider to the policy, but not to make it retroactive so as to cover the loss. An offer to this effect made by Stuart Investment Company was rejected by Mr. Davis. No written application for the insurance policy was ever made by Mr. Davis. The contract in that respect as between him and the agent rests in parol. His offer was to buy a policy with certain stated features, and according to his understanding the agent agreed to furnish it. The agent testified that plaintiff asked for that particular kind of a policy and he informed the general manager and was under the impression the policy delivered was of the kind ordered. About as nearly as parties may mutually agree upon such a matter, the insured and the agent for the insurer understood the policy was to cover plaintiff's son. The policy omitted this essential element of the contract as understood by both of them and not discovered by either of them until the loss occurred. In such circumstances the plaintiff is entitled to have the policy reformed so as to express the real agreement of the parties, and his failure to examine the policy

when received will not defeat his right to have reformation of the policy. *Robinson v. Union Automobile Ins. Co.,* 112 Neb. 32; *Central Granaries Co. v. Nebraska L. M. Ins. Ass'n,* 106 Neb. 80. In the first of these cases we said: "When a soliciting agent of an insurance company and the insured mutually agree upon the terms and conditions of the insurance contract, and the policy, later issued by the company, omits one of the essential elements of the contract, which is not discovered by the insured until after a loss occurs, he may then have the policy reformed so as to express the real agreement of the parties, and his failure to promptly examine the policy when received and discover the departure therein from the real agreement will not defeat his right to have reformation of the policy." *Robinson v. Union Automobile Ins. Co., supra.*

Then, too, Scherer had all the reason in the world to think that Davis would believe the policy had been written as he requested it. Davis had not even known, as Scherer knew, that there was ever any question that the policy would contain the terms requested. So if it be argued that Mr. Kimball, as general manager of defendant, understood the contract in a different sense than plaintiff understood it, although he knew what plaintiff had asked for and plaintiff did not know that what he had asked for had not been provided for in the contract, then a section of the Code aids in the construction of the agreement: "When the terms of an agreement have been intended in a different sense by the parties to it, that sense is to prevail against either party in which he had reason to suppose the other understood it." Comp. St. 1929, sec. 20-1217.

It is argued by defendant that the trial court erred in reforming the policy and in enforcing it because the contract to insure against "damages for negligence of a driver under 16 years of age" is contrary to public policy.

The same question arose in *Messersmith v. American Fidelity Co.,* 232 N. Y. 161. The New York law fixed the age limit at 18 years. In a well-reasoned opinion by Judge Cardozo, the court of appeals held that public policy does not forbid the enforcement of such a contract of insurance.

In *McMahon v. Pearlman,* 242 Mass. 367, it was held that, although the operation of a registered motor vehicle without a license and unaccompanied by a licensed operator is a crime under the state law, yet such an operator is not prevented by public policy from recovering under an insurance contract indemnifying against accident.

The opinion in *Messersmith v. American Fidelity Co., supra,* cites numerous instances in which liability was incurred through personal fault that is defined by statute as a misdemeanor or a crime and yet was permitted to be the subject of recovery against an insurer, and pertinently says: "Insurance instead of prejudicing the victim of an accident is seen to supply in many cases the only fund from which the victim can be paid. *Boston & Albany R. Co. v. Mercantile Trust Co.,* 82 Md. 535, at pp. 577, 578; *Phœnix Ins. Co. v. Erie & W. Transportation Co.,* 117 U. S. 312, at p. 324. Courts are slow to substitute their own varying views of policy for those which have found embodiment in settled institutions, in everyday beliefs and practices, which have taken root and flourished. *Janson v. Driefontein Mines, Ltd.,* 1902 A. C. 484, at p. 496. The field of discretion is still narrower when there has been statutory sanction, tacit, if not express, of callings and forms of conduct which it would have been easy to condemn. * * * We conclude that public policy does not forbid the enforcement of the contract. *Brock v. Travelers Ins. Co.,* 88 Conn. 308, 313; *Ford v. Stevens Motor Car Co.,* 203 Mo. App. 669; *Tinline v. Whitecross Ins. Co.,* 90 L. J. K. B. 1118."

We are therefore of the opinion that the trial court did not err in reforming the contract so as to insure the plaintiff against loss by reason of the operation of his car by his son who was under 16 years of age at the time; that such contract was not void as against public policy; and that plaintiff may recover on said contract as reformed.

The amount of the recovery is not complained of. For the reasons stated in this opinion, we affirm the judgment of the district court.

AFFIRMED.