No. 82-79

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

STATE BANK OF TOWNSEND, A MONTANA
CORPORATION,

Plaintiff and Appellant,

vs.

MARYANN'S, INC., a Montana
corporation, and ARLO B. WESTON
and VERNETTA WESTON, husband
and wife,

Defendants and Respondents.

---

Appeal from:  District Court of the Eighteenth Judicial District,
              In and for the County of Gallatin
              Honorable Joseph B. Gary, Judge presiding.

Counsel of Record:

    For Appellant:

        Hooks and Budewitz, Townsend, Montana
        Thomas A. Budewitz argued, Townsend, Montana

    For Respondents:

        Small, Hatch and Doubek, Helena, Montana
        Floyd O. Small argued, Helena, Montana
        Moore, Rice, O'Connell & Refling, Bozeman, Montana

---

Submitted:  December 2, 1982

Decided:  May 10, 1983

Filed:  MAY 10 1983

_Ethel M. Harrison_
—————————————————————————
                        Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

State Bank of Townsend (Bank) brought this action on a promissory note executed by defendants Maryanns, Inc. and Arlo B. Weston (herein referred to as Maryanns) in the District Court of the Eighteenth Judicial District for Gallatin County. Maryanns counterclaimed, seeking damages alleged to have been caused by the fraudulent misrepresentation of the Bank and the breach of an agreement to loan money. Following jury trial, judgment was entered for Maryanns in the amount of $129,484.13 ($150,000.00 verdict less $16,015.87 owing from Maryanns to the Bank and $4,546.00 attorneys fees). The Bank appeals. We affirm the judgment in part and reverse as to the balance of the judgment, returning the cause for new trial.

The issues presented by the Bank are:

1. Was it error for the court to refuse to reduce Maryanns' damages by 40 percent?

2. Did the court err in refusing to instruct on the statute of frauds?

3. Was there sufficient evidence to support the verdict of negligent misrepresentation?

4. Was there sufficient evidence to support the finding of damages to Maryanns?

5. Was it error to admit Maryanns' Exhibit "AA"?

Arlo and Vernetta Weston are the principal stockholders of Maryanns, Inc., a corporation. Maryanns operated a clothing store in Bozeman starting in 1974. In July 1978, the Westons leased a store building in Townsend from Mrs. Ragen under a six month's lease with option to purchase during the lease term; and they also bought certain inventory and fixtures from Mrs. Ragen.

2

In August 1978, Mr. Weston went to the Bank to inquire about borrowing money in connection with the opening of the Townsend store. Mr. Weston applied for a loan and provided personal and corporate financial statements. Mr. Weston was furnished with a corporate borrowing resolution to be adopted by Maryanns, Inc. On August 29, Mr. Weston returned the incomplete corporate borrowing resolution to Mr. Wilson, a bank officer. After a discussion between banker Wilson and Mr. Weston, Wilson inserted a $50,000 limit in the blank in the borrowing resolution.

On August 29, 1978, Maryanns, Inc. and Mr. Weston signed a promissory note for $20,000, the proceeds of which were deposited in the corporate bank account. On January 3, 1979, $2,000 was borrowed by a note signed by Mr. Weston. On January 18, 1979, an additional $7,000 was borrowed under a note signed by Mr. Weston. In early February 1979, Mr. Weston notified Mrs. Ragen of his intention to exercise his option to purchase her building. At that time Mr. Weston left a check for $20,800 drawn on the Bank for the down payment with banker Wilson and told Wilson "to give it to Kathern Ragen when she had the necessary papers that she was supposed to have ready for the agreement." Upon being advised that the check was too large, Mr. Weston delivered to banker Wilson a new check for $17,000 with the same instructions. On March 8, 1979, Mr. Weston called banker Wilson and told him that he had received the necessary papers from Mrs. Ragen and to give her the check. On March 9, 1979, Mrs. Ragen picked up the check from Wilson and was unable to secure payment because there were insufficient funds to cover the check. On March 13, 1979, Mrs. Ragen gave Maryanns written notice of her rescission of the lease-option. On March 19 or March 20, 1979, banker Wilson wrote Mr. Weston a

3

letter which declared all three notes due and payable immediately. On April 1, 1979, after Maryanns vacated the building, the Bank rented the building from Mrs. Ragen, held a sale of the inventory remaining in the store, and applied the proceeds to the various notes, leaving a remaining balance on the notes in the amount of $14,647.78 together with accruing interest.

The Bank then sued the Westons and Maryanns to foreclose upon the various security interests given as collateral. Westons and Maryanns counter-claimed, contending that the Bank had represented that Maryanns had a $50,000 line of credit at the Bank and seeking damages. Following trial, the jury completed special interrogatories and a special verdict, and judgment was entered for Maryanns in the amount of $150,000, less $16,015.87 found to be due and owing by Maryanns to the Bank on the notes, and $4,546.00 attorneys fees.

Unfortunately it is necessary to comment on the state of the record before we address the specific issues raised. In the course of preparation for trial, the court prepared an extensive pre-trial order which included agreed facts and the contentions of both the Bank and Maryanns. The substance of the contentions of Maryanns was that the Bank fraudulently caused Maryanns to believe the Bank was willing to grant credit of up to $50,000 and that the Bank knowingly, willfully, deceitfully and fraudulently failed to inform Weston that the Bank was not going to advance the money; that the Bank acted in a fraudulent and precipitous manner in declaring the notes of Maryanns to be due and payable; and that as a result of the foregoing, damages were caused to Maryanns. Under Rule 16, M.R.Civ.P., such an order controls the subsequent course of the action unless modified at the

4

trial to prevent manifest injustice. As appears from the instructions, the theory of Maryanns case was changed during the course of the trial to one of negligent misrepresentation. In the absence of an issue of negligent misrepresentation in the pre-trial order or subsequent amendment, the District Court should not have allowed the legal theory of negligent misrepresentation to be presented to the jury. Sufficient objections were not made to justify a reversal by this Court. The change in theory during the course of the trial resulted in confusion as to the law of the case on the part of the attorneys and the trial court. Contradictory and confusing instructions were one result. In addition we have found it almost impossible to analyze the confused record.

The Bank contends that it was error for the District Court to refuse to reduce the damage verdict of $150,000 by 40%. The Bank contends that under the form of interrogatory completed by the jury, the jury determined that the full amount or total amount of Maryanns' compensatory damages was $150,000 and that such amount should be reduced by 40%, which was the jury determination of the percentage of negligence chargeable to Maryanns. In its order refusing to reduce the award, the District Court considered the special interrogatories and the instructions, and in particular Instruction No. 35. The Court concluded that because of the wording of the latter portion of Instruction 35, which provided that damage allowed shall be diminished in proportion to the amount of negligence attributable to the party recovering, the jury may have considered both the instruction and the interrogatory and diminished the damages when it fixed a figure of $150,000. In pertinent part, the

5

interrogatories which were completed by the jury were as follows:

> "On the defendant's counter-claim against the plaintiff you will answer the following interrogatories:
>
> "INTERROGATORY NO. 2.: Did you find that the plaintiff actually or impliedly represented to the defendants that it would loan sufficient funds to make the downpayment to Katherine Hunsaker [Ragen] for the purchase of the Townsend store? (mark one)
>
> Yes ___X___ No _____
>
> ". . .
>
> "If your answer is "yes," answer the following interrogatories.
>
> "INTERROGATORY NO. 3.: Was the plaintiff's representation intentional or an act of negligence? (mark one)
>
> Intentional _____ Negligent ___X___
>
> ". . .
>
> "INTERROGATORY NO. 6.: Were the defendants guilty of negligence? (mark one)
>
> Yes ___X___ No _____
>
> "INTERROGATORY NO. 7.: If your answer to Interrogatory No. 6 is "yes," of what percentage out of 100% are the defendants guilty?
>
> ___40___ %
>
> "INTERROGATORY NO. 8.: What is the full amount of defendant's compensatory damages?
>
> Amount - $ ___150,000___

In addition to the foregoing special interrogatories, the District Court gave an instruction on contributory negligence:

> "INSTRUCTION NO. ___35___
>
> "You are instructed that the laws of the State of Montana provide that contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in <u>death or injury to person or property</u>, if such negligence was not greater than the negligence of the person against whom the recovery is sought, but any damage allowed shall be diminished in proportion to the amount of negligence attributable to the person recovering.

6

Contributory negligence is not a defense to a willful wrongdoing." (underscoring added)

In considering the motions of the Bank seeking a reduction of the $150,000 damage figure, the District Court was presented with juror affidavits by counsel for Maryanns. Relying on Harry v. Elderkin (1981), ____Mont.____, 637 P.2d 809, 38 St.Rep. 2076, the District Court refused to consider the jurors' affidavits, which had been filed by the defendants with the aim of explaining the jurors' viewpoint of the damage award. We affirm the holding of the District Court with regard to juror affidavits. The following statements from Harry are pertinent:

> "Montana law on the use of juror testimony and affidavits upon an inquiry into the validity of the verdict is concisely summarized by Rule 606(b), Montana Rules of Evidence as follows:
>
> "'Inquiry into validity of verdict or indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent or dissent from the verdict or indictment or concerning his mental processes in connection therewith. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.'" ____ Mont. at ____, 637 P.2d at 813, 38 St.Rep. at 2079.

There are exceptions set forth in Rule 606(b) which are not pertinent. Juror affidavits are useable where external influences have been exerted upon a jury or where extraneous prejudicial information is brought to the jurors' attention. In holding that affidavits are not admissible to prove the thought processes of the jurors, this Court stated:

> "Here, the juror affidavit reflects the foreman's belief that the jury did not understand the instructions on contributory negligence, comparative negligence and mitigation of damages. This case falls into the category of cases involving internal influences on the jury. We hold that the District Court abused its discretion in granting a new trial on the basis of a juror

affidavit which purports to impeach the verdict by delving into the thought processes of the jurors." Harry, ____ Mont. at ____, 637 P.2d at 813, 38 St.Rep. at 2080.

We hold in this case that it would be improper to consider the juror affidavits to delve into the thought processes of the jurors in connection with the completion of the special interrogatories.

After careful consideration of Instruction 35 and the other instructions, as well as the special interrogatories, we have concluded that the law of the case as contained in the instructions and interrogatories is so inherently contradictory and confusing that a new trial is required in justice to both the plaintiff and defendants. As pointed out by the District Court, the latter portion of Instruction 35 can be interpreted as instructing the jury that any damages allowed to Maryanns shall be diminished in proportion to the amount of negligence attributable to Maryanns, even though Interrogatory No. 8 asks that the jury determine the "full amount of defendants' compensatory damages." We find it impossible to determine which standard the jury should have applied or did apply. This confusion is compounded by the placement of Interrogatory No. 8, asking the determination of the compensatory damages, immediately after Interrogatory No. 7, which covers the percentage of negligence on the part of the defendant. This confusion is enhanced by the reference in Instruction No. 35 to "negligence resulting in death or injury to person or property." Obviously this was an instruction prepared for a different type of case than the present case, which does not involve either death or injury. In addition the failure to carefully instruct on negligent misrepresentation as distinguished from fraudulent

misrepresentation is demonstrated in the first paragraph of Instruction No. 24, to which the Bank did object:

"In this action defendants and counter-claimants, Arlo Weston and Maryanns, Inc., seek to recover damages they claim they sustained as a result of negligent and fraudulent misrepresentations made by the Bank . . ."

The remainder of the instruction sets forth the elements of negligent misrepresentation. The initial sentence only muddies the clear legal distinction between fraudulent misrepresentation and negligent misrepresentation.

In a similar manner, Instruction No. 36 makes reference a number of times to the injuries to the defendant and plaintiff's negligence as a proximate cause of the injuries to the defendant, raising the probability of confusion on the part of the jury in considering the instructions.

Initially the District Court concluded that it was the function of the judge to apportion damages depending upon the percentage determined by the jury. Because of the confusion resulting from the interrogatories and instructions, the District Court subsequently reversed that conclusion.

We are not able to determine what the jury was instructed to do by virtue of the interrogatories and instructions, nor are we able to determine what the jury actually did. In the absence of adequate objections of record, we have concluded that this Court may apply the "plain error" doctrine under which we consider questions raised for the first time on appeal if the existing error affects the substantial rights of the parties. Halldorson v. Halldorson (1977), 175 Mont. 170, 573 P.2d 169. In this case both parties have a substantial right to instructions which correctly set forth a legal basis for the assessment of damages, as well as an understandable method of computing the amount of such damages.

Rule 51, M.R.Civ.P., does provide that no party may assign as error the failure to instruct on a point of law unless he offers an instruction thereon, and this Court frequently has refused a review on that basis. Nevertheless, this Court will consider whether parties have been denied substantial justice by the trial court. As stated in McAlpine v. Midland Elec. Co. (1981), ____ Mont. ____, 634 P.2d 1166, 1168-69, 38 St.Rep. 1577, 1580:

> "Normally, the party complaining of error must stand or fall upon the ground relied upon in the trial court and objections which are urged for the first time on appeal will not be considered by this Court. Bower v. Tebbs (1957), 132 Mont. 146, 160, 314 P.2d 731, 739. Nevertheless, this Court has a duty to determine whether the parties before it have been denied substantial justice by the trial court. This Court can, within its sound discretion, consider whether the trial court has deprived a litigant of a fair and impartial trial, even if the parties ignored the mandate of a statute or an established precedent."

To the same affect is our holding in Kudrna v. Comet Corp. (1977), 175 Mont. 29, 51, 572 P.2d 183, 195:

> "By this decision this Court is not repudiating the sound rules of practice which require timely, specific objections to instructions and the full presentation of issues for review on appeal. On the facts having carefully reviewed the entire record, we hold that a serious error which appears on the face of that record is reviewable, although not presented by the parties."

Our holding is consistent with the holding in Black v. Stephens (3rd Cir. 1981), 662 F.2d 181, cert. denied sub nom. Stephens v. Black (1982), 455 U.S. 1008, 102 S.Ct. 1646, 71 L.Ed.2d 876, in which the Circuit Court explained the problem with regard to Rule 51 and failure to object and reached a conclusion which we specifically approve:

> "It is true that Rule 51 of the Federal Rules of Civil Procedure provides that '[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.' . . . In [City of Newport v. Fact Concerts, Inc. (1981), 453 U.S.

247, 101 S.Ct. 2748, 69 L.Ed.2d 616], the Supreme Court recognized that the purpose of Rule 51 is to encourage counsel to correct errors in the judge's charge before the trial ends, while these errors can still be rectified. The Rule seeks to avoid situations in which an error in jury instructions would necessitate a new trial, one that could have been prevented had the error been brought to the judge's attention before jury deliberations began.

" . . .

"'Although generally jury instructions will not be reviewed on appeal if they were not objected to at trial, we have the discretion to review instructions sua sponte if the error is fundamental and highly prejudicial . . . and our failure to consider the error would result in a miscarriage of justice.'" 662 F.2d at 206-07.

We also find an inherent error in the instructions and special interrogatories as submitted to the jury. This question was analyzed by Justice Sheehy in his dissent in Harry v. Elderkin, supra. The special interrogatories and instruction in Harry v. Elderkin are directly comparable to the above-quoted interrogatories and instruction. As pointed out by Justice Sheehy, the error arose because the District Court submitted a special verdict without an instruction telling the jury how to use the special verdict. In this case, Instruction No. 35 does conflict with the directions contained in the special verdict. On retrial, should the question arise, an instruction similar to that set forth in the Harry v. Elderkin dissent properly could be used.

Because we are sending the case back for a new trial, it is appropriate that we comment upon the issue of negligent misrepresentation. We approve the definition of negligent misrepresentation as contained in Restatement (Second) of Torts §552:

"§ 552. Information Negligently Supplied for the Guidance of Others

"(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of

11

others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

"(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

" . . . "

In considering the definition, we find the following comment by the authors of the Restatement to be applicable:

"The liability stated in this Section is likewise more restricted than that for fraudulent misrepresentation stated in § 531. When there is no intent to deceive but only good faith coupled with negligence, the fault of the maker of the misrepresentation is sufficiently less to justify a narrower responsibility for its consequences.

"The reason a narrower scope of liability is fixed for negligent misrepresentation than for deceit is to be found in the difference between the obligations of honesty and of care, and in the significance of this difference to the reasonable expectations of the users of information that is supplied in connection with commercial transactions. Honesty requires only that the maker of a representation speak in good faith and without consciousness of a lack of any basis for belief in the truth or accuracy of what he says. The standard of honesty is unequivocal and ascertainable without regard to the character of the transaction in which the information will ultimately be relied upon or the situation of the party relying upon it. Any user of commercial information may reasonably expect the observance of this standard by a supplier of information to whom his use is reasonably foreseeable.

"On the other hand, it does not follow that every user of commercial information may hold every maker to a duty of care. Unlike the duty of honesty, the duty of care to be observed in supplying information for use in commercial transactions implies an undertaking to observe a relative standard, which may be defined only in terms of the use to which the information will be put, weighed against the magnitude and probability of loss that

12

might attend that use if the information proves to be incorrect. A user of commercial information cannot reasonably expect its maker to have undertaken to satisfy this obligation unless the terms of the obligation were known to him. Rather, one who relies upon information in connection with a commercial transaction may reasonably expect to hold the maker to a duty of care only in circumstances in which the maker was manifestly aware of the use to which the information was to be put and intended to supply it for that purpose. . .

"Since the rule of liability stated in Subsection (1) is based upon negligence, the defendant is subject to liability if, but only if, he has failed to exercise the care or competence of a reasonable man in obtaining or communicating the information. (See §§ 283, 288 and 289). What is reasonable is, as in other cases of negligence, dependent upon the circumstances. It is, in general, a matter of the care and compentence that the recipient of the information is entitled to expect in the light of the circumstances and this will vary according to a good many factors. The question is one for the jury, unless the facts are so clear as to permit only one conclusion." §552 (comment) at pp. 127-30.

The Bank contends that the District Court erred in refusing its proposed instructions on the application of the statute of frauds. The Bank argues that there was no ability on the part of the defendants to make the payment of the claimed amount within one year and that section 28-2-903(1)(a), MCA applied. The evidence does not support this contention. While the jury did find that the Bank actually or impliedly represented that it would loan sufficient funds to make the down payment for the purchase of the Townsend store, the evidence does not disclose any terms of an agreement for payment. In the absence of evidence showing that the agreement could not be performed within one year, the statute of frauds is not applicable.

While the evidence does appear sufficient to support the verdict of negligent mispresentation and the finding of damages to the defendant, such conclusion is based upon the contradictory and incomplete instructions with regard to negligent misrepresentation. We therefore do not

13

specifically rule on the sufficiency of such evidence in the absence of adequate and complete instructions on the law of the case.

The bank contends that it was error to admit Maryanns' Exhibit "AA" into evidence. The exhibit was prepared by a certified public accountant who had many years of experience and had handled the Maryanns store in Bozeman and other communities. He was thoroughly familiar with the business operations and with profits and losses and his testimony regarding anticipated net income formed the basis for Exhibit "AA", a ten-year forecast of earnings. Instruction No. 29 detailed the claimed elements of defendants' damages and in part stated:

> "Defendants and counter-claimants claim in this action that the Bank and its officers have, as a direct and proximate result of their false, negligent, fraudulent and wrongful acts and omissions, caused counter-claimants, Arlo Weston and Maryanns, Inc., damages in the amount of One Million Dollars ($1,000,000,00). This, as claimed by counter-claimants, is for loss of the clothing store in Townsend (including inventory and fixtures owned by them) and for profits they might reasonably have expected to enjoy from the operation of said store for the next 10 years; for the causing of the rescission, by Kathern Ragen, of her contract to sell the store building to counter-claimants; for damage to the reputation and credit rating of counter-claimants with the general public, and more particularly with Banks, business establishments and wholesalers; and also for the subsequent closing of the Bozeman store, as a result thereof."

In addition, Instruction No. 33 was given by the court regarding damages:

> "Damages are recoverable for losses caused or for profits and other gains prevented by the breach only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty. Damages which are a matter of mere speculation cannot be the basis of recovery. Recovery cannot be denied for damages simply because they are difficult to ascertain."

14

The instructions adequately establish a standard for computing damages with reasonable certainty. This answers the Bank's argument regarding lost profits.

There is substantial evidence to support the elements of damages in Instruction No. 29. The testimony of the certified public accountant and the testimony that the Westons invested between $80,000 and $95,000, together with evidence regarding the rescission of the Ragen contract, damage to reputation and credit rating, and subsequent closing of the stores, all afford an adequate basis for the conclusions of the jury. We hold that Exhibit "AA" was properly admitted.

We reverse the judgment of the District Court and remand the case for a new trial.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

Mr. Justice Daniel J. Shea will file a separate opinion later.

15