532 So.2d 402 (1988)
Rudolph CHANDLER, Plaintiff-Appellant-Appellee,
v.
Otis JONES, et al., Defendants-Appellees-Appellants.
No. 87-681.
Court of Appeal of Louisiana, Third Circuit.
October 5, 1988.
*403 Rudolph Chandler, Alexandria, pro se.
Gachassin & Capretz, Nicholas Gachassin, Jr., Lafayette, for plaintiff/appellee/appellant.
Jeansonne & Briney, Charles J. Foret, Lafayette, Roy, Forrest & Lopresto, L. Albert Forrest, New Iberia, Martin, Taulbee, Rowe, Bares & Oliver, Howard W. Martin, Lafayette, for defendants/appellees/appellants.
Stockwell, Sievert, Viccellio, Clements & Shaddock, Robert W. Clements, Lake Charles, Due, Smith & Caballero, Paul Due, Baton Rouge, David Kaufman, Lafayette, for defendant/appellee.
Before DOMENGEAUX, KNOLL and KING, JJ.
KNOLL, Judge.
This appeal addresses the question of tort liability as it pertains to the responsibility for a gap in insurance coverage between the primary and excess carriers.
Rudolph Chandler (hereafter Chandler), as original plaintiff and as the assignee of some of the original defendants and third-party plaintiffs, Otis Jones (hereafter Jones), and his employer, Statewide Supply Corporation (hereafter Statewide), appeals the jury's verdict regarding third-party defendants, State Farm Mutual Automobile Insurance Company (hereafter State Farm), its agent, Walter J. Romero (hereafter Romero), David Billeaudeaux (hereafter Billeaudeaux), and his employer, Employers Insurance of Wausau (hereafter Wausau). The jury rendered a verdict: (1) in favor of plaintiff, Chandler, on the main demand for $369,960.93 and in solido against Jones, Statewide, and its primary insurer, State Farm, but limited State Farm's liability to its coverage limit of $250,000; (2) denying reformation of the State Farm policy to provide $500,000 single limit coverage; (3) allocating 80% of the fault to third-party defendant, Billeaudeaux, and his employer, Wausau, for failing to have Statewide's primary motor vehicle liability coverage increased to $500,000 single limits coverage, thereby making them liable to Statewide for 80% of the amount of plaintiff's damages above $250,000 *404 but below $500,000; (4) absolving Romero and State Farm of any fault for failing to raise Statewide's primary motor vehicle liability insurance to $500,000; and (5) fixing Statewide's fault at 20% for failing to raise its primary motor vehicle liability coverage, thereby making it liable for 20% of the amount of the plaintiff's damages above $250,000 but below $500,000.
Chandler and his assignors, Jones and Statewide, contend on appeal that the jury verdict should be modified: (1) to hold State Farm, Romero, Billeaudeaux and Wausau solidarily liable to Statewide on its third-party demand; and, in the alternative, (2) to at least hold Billeaudeaux and Wausau 100% at fault in failing to raise Statewide's primary motor vehicle coverage to a minimum of $500,000.
Billeaudeaux and Wausau also appeal, contending: (1) the jury was manifestly erroneous in finding Billeaudeaux at fault and/or contributed to the gap in coverage between the State Farm policy and the Wausau excess liability policy; (2) in the alternative, the jury's percentage assessment of fault to Billeaudeaux was manifestly erroneous; and (3) the trial court erred in finding Billeaudeaux and Wausau owed interest from the date of Chandler's original judicial demand, March 31, 1982.

FACTS
A detailed account of the underlying negligence of Statewide and its employee, Jones, in causing the accident which injured Chandler is not necessary for a determination of this appeal. The only pertinent fact in that regard is that on April 24,1981, Chandler was injured when his automobile was rear-ended by a Statewide automobile operated by Jones.
The following facts relative to Statewide's procurement of excess liability insurance are essential to the resolution of the issues raised in this appeal. State Farm was Statewide's primary automobile liability insurer which provided $250,000 single limit coverage.
In January 1978 Billeaudeaux became a salaried insurance agent for Wausau. During the first part of 1981 he received an inquiry from Statewide concerning the procurement of excess liability insurance. On March 6, 1981, Billeaudeaux prepared an application for Statewide's excess coverage with Wausau indicating therein that Statewide had underlying primary fleet motor vehicle liability insurance with State Farm with $500,000 single limit coverage. Wausau's $1,000,000 excess coverage was contracted to commence once Statewide's liability exceeded the $500,000 single limit coverage. When Billeaudeaux executed this application he knew that Statewide's single limit coverage with State Farm was only $250,000. Despite this knowledge, Billeaudeaux issued Statewide a binder on March 9, 1981, and though he brought Statewide's attention to the gap in coverage between $250,000 and $500,000 single limit coverage, he never again inquired from Statewide or its office personnel whether State Farm's policy limits on single limit coverage had been increased to eliminate this gap.
As stated hereinabove, on April 24, 1981, Jones, Statewide's employee, rear-ended Chandler, causing him damages later determined by the jury to be $369,962.93, and exposing Statewide to $119,960.93 damages in excess of its primary liability coverage with State Farm, but less than the $500,000 threshold of coverage provided by Wausau.

LIABILITY
Chandler, individually and as assignee of Jones and Statewide, contends that the jury erred in failing to find Romero, State Farm, Billeaudeaux and Wausau solidarily liable to him; in the alternative, he argues that on Statewide's third party demand the jury should have found Billeaudeaux and his employer, Wausau, as third party defendants, 100% liable to Statewide. Billeaudeaux and Wausau also contend that the jury's determination of liability on the third-party demand was manifestly erroneous, and argue that they should be completely absolved from liability to third-party plaintiff, Statewide.
It is well established that an insurance agent or broker who undertakes to *405 procure insurance for a client owes an obligation to use reasonable diligence in attempting to place or obtain the requested insurance and has a duty to notify the client promptly if it has failed to obtain the requested insurance. The client may recover from the broker or agent the loss sustained as a result of the failure to procure the desired coverage if the actions of the broker or agent warranted an assumption by the client that he was properly insured in the amount of the desired coverage. Karam v. St. Paul Fire & Marine Insurance Company, 281 So.2d 728 (La. 1973).
In Beam v. Intercontinental Life Ins. Co., 447 So.2d 12, at 14 (La.App. 2nd Cir. 1984), the court held that in order for a client to recover from an insurance agent for not obtaining the requested insurance coverage, the client must prove: "(1) an undertaking or agreement by the insurance agent to procure insurance; (2) failure of the agent to use reasonable diligence in attempting to place the insurance and failure to notify the client promptly if he has failed to obtain the insurance; and (3) the actions of the agent warranted an assumption by the client that he was properly insured."
The determination and apportionment of fault are factual matters and the trier of fact's findings in this regard should not be disturbed by a reviewing court unless they are manifestly erroneous. Finley v. Bass, 478 So.2d 608 (La.App. 2nd Cir. 1985). A jury's findings of fact should be affirmed unless characterized by manifest error and should not be upset except in the most compelling and clearest case of error. Arnold v. T G & Y Stores Co., 466 So.2d 529, at 532 (La.App. 3rd Cir.1985), writ denied, 470 So.2d 126 (La.1985).
With regard to Romero and State Farm we find all of the elements set forth in Beam lacking, and therefore affirm the jury's finding that they were free from fault. The jury was presented with two issues of conflicting testimony, one with reference to a telephone call Geneva Broussard, Statewide's office manager, made to Jerry Landreth, State Farm's employee, in which she inquired about the limits of coverage State Farm then provided, and another about whether State Farm ever mailed its certificate of insurance to Billeaudeaux and Wausau. The jury resolved these differences in favor of Romero and State Farm, and our examination of the record does not show that these determinations, adverse to Statewide, were clearly erroneous. Likewise, there was no testimony that State Farm ever undertook or agreed to procure additional insurance for Statewide, and on March 19, 1981, State Farm forwarded an insurance certificate which reflected no change in the $250,000/$500,000 coverage Statewide previously carried.
We now turn our attention to Billeaudeaux and Wausau. The jury found Billeaudeaux 80% at fault in failing to eliminate any gap in insurance coverage. Billeaudeaux and Wausau argue that they were free from fault, and Chandler, Jones and Statewide contend that Billeaudeaux and Wausau should have been found 100% at fault.
Billeaudeaux testified that he brought Statewide's attention to the fact that it needed to increase its single limit coverage to $500,000. Nevertheless, he submitted an application to Wausau, issued a binder, and eventually issued the Wausau policy, knowing that there was a problem with Statewide's underlying coverage. Billeaudeaux memorialized his knowledge of the problem by sending a memorandum to Wausau's regional office which contained a query from him asking if the regional office wanted a certificate of insurance from State Farm which showed increased limits of $500,000. Wausau advised Billeaudeaux that it wanted such a certificate. Despite this Billeaudeaux never again inquired from Statewide, its employees or State Farm whether the single coverage limits had been increased, and could not recall if he ever received a copy from State Farm of its insurance certificate for Statewide. He admitted that he never told Sammy Fontenot, Statewide's president, that there was a requirement for $500,000 underlying single limit coverage, and never advised him that Wausau could have reduced the threshold *406 for the initiation of its excess policy. He further testified that when he delivered the excess liability policy, he knew there was a gap in the liability coverage, and never made any effort to determine whether the gap had been closed by Statewide, and, he never contacted State Farm directly about this problem. This all took place prior to the April 24, 1981, automobile accident sued on.
Geneva Broussard, Statewide's office manager, testified that Billeaudeaux advised her that she needed to ask State Farm to increase its single limit liability coverage to $500,000, and State Farm needed to provide her with a certificate of insurance showing the change. She candidly admitted at trial that she neither knew at the time what $500,000 single limit policy meant, nor did Billeaudeaux explain it to her. When Mrs. Broussard telephoned State Farm she wrote down a message which indicated that State Farm advised her that she already had $500,000 coverage and that a certificate of insurance was being sent to Billeaudeaux. Mrs. Broussard later received the certificate of insurance issued on March 19, 1981, addressed to Billeaudeaux, with additional copies for Statewide, and that she filed them in the fleet policy file, thinking that Billeaudeaux had received a separate copy.
Sammy Fontenot, Statewide's president, testified that he contacted Billeaudeaux and advised him that the company wanted excess liability coverage in the amount of $1,000,000 over its basic primary policy limits. He confirmed that it was his intention to purchase excess insurance to dovetail with the applicable primary limits so that there would be no gap in coverage. He further testified that he had no recollection of ever seeing the certificates from State Farm which were filed in Statewide's insurance file.
It is clear to us, after thoroughly reviewing the record, that Billeaudeaux was negligent. He knew Statewide had a problem with its underlying insurance coverage, knowingly issued an insurance policy which did not dovetail excess coverage with the primary policy, did not advise Statewide that the lower limits of the Wausau policy could be reduced to lessen or eliminate the gap, and took no steps thereafter to inquire if the problem had been remedied. Certainly, Billeaudeaux's delivery of the actual policy to Statewide reasonably impressed Statewide that it was now fully insured as requested. Billeaudeaux was the insurance professional on whom Statewide relied and he can not now escape liability by urging that he delegated his duty to remedy this gap to Statewide and its employees to complete the work he was responsible for completing.
Was Statewide 20% at fault, as found by the jury? After reviewing the jurisprudence and the facts presented, we find the jury's determination was not manifestly erroneous. In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed. Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967 (La.1985). In assessing the nature of the conduct of the parties, the capacity of the actor, whether superior or inferior, the degree of awareness of the danger possessed, and an appreciation of the greatness of the risk created must be evaluated. Id., at 974. After carefully considering these guidelines, we find that Statewide must share fault with Billeaudeaux and his employer, Wausau.
Although an insured should not be held to have read and understood the complex and often confusing intricate detailed provisions of an insurance policy, an insured should be held to have read and know the liability limits of his automobile insurance policy, plainly disclosed on the face of the policy. Smith v. Millers Mut. Ins. Co., 419 So.2d 59 (La.App. 2nd Cir. 1982), writ denied, 422 So.2d 155 (La.1982). In the case sub judice, Statewide's president, Sammy Fontenot, an educated, experienced businessman, testified that he understood the meaning of single limit coverage, and that his office manager told him of the need to raise the State Farm single limit liability coverage to $500,000. Although *407 the testimony reflects that Mr. Fontenot did not pursue this issue, even though it is evident that Statewide received three copies of the certificate of insurance from State Farm, because he also assumed that Billeaudeaux received the certificate of insurance from State Farm, it is clear under the rationale of Smith, supra, that the jury's allocation of 20% fault to Statewide is supported by the record.

JUDICIAL INTEREST
Billeaudeaux and Wausau next argue that the trial court erred in assessing them, as third-party defendants, with judicial interest from the date of Chandler's original demand dated March 31, 1982, rather than the time they were named third-party defendants on February 13, 1986. We disagree.
LSA-R.S. 13:4203 provides:
"Legal interest shall attach from date of judicial demand, on all judgments, sounding in damages, `ex delicto', which may be rendered by any of the courts."
Statewide was found liable in tort to Chandler not only for the principal amount of damages, but also under LSA-R.S. 13:4203 for legal interest from March 21, 1982, the date of judicial demand. In its third-party demand against Billeaudeaux and Wausau, Statewide sought indemnification for the whole amount of its damages, inclusive of legal interest, which exceeded the primary coverage afforded by State Farm. Although Billeaudeaux and Wausau may be technically correct in their argument that Billeaudeaux and Wausau were not solidarily liable with Statewide and Jones to Chandler, we find no error in the trial court's ruling regarding the imposition of legal interest because in order for Statewide to receive full indemnification, the judgment on the third-party demand of necessity must include the legal interest imposed on Statewide in the principal demand. Therefore, under these circumstances the trial court's award of legal interest from the date of the principal demand is correct.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed one-half to Billeaudeaux and Wausau, and one-half to Statewide.
AFFIRMED.