DONALD FLAMME, APPELLANT, V. WOLF INSURANCE AGENCY, A
NEBRASKA PARTNERSHIP, AND STEVEN E. GRUEBER, APPELLEES.
VERONICA FLAMME, APPELLANT, V. WOLF INSURANCE AGENCY, A
NEBRASKA PARTNERSHIP, AND STEVEN E. GRUEBER, APPELLEES.
476 N.W.2d 802

Filed November 8, 1991.    Nos. 90-1222, 90-1223.

Stephen L. Gerdes for appellants.

Daniel P. Chesire and John A. Cheloha, of Kennedy, Holland, DeLacy & Svoboda, for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

In these consolidated cases, Donald and Veronica Flamme each appeal summary judgment holdings that an insurance agent did not (1) negligently misrepresent that their underinsured motorist insurance coverage provided $50,000 over and above the coverage available from an underinsured motorist or (2) negligently fail to obtain such insurance for them. The suits were brought against Steven E. Grueber and Wolf Insurance Agency, in which Grueber was the managing partner.

Since there is a material issue of fact in each case, we reverse the trial court's judgments and remand the causes for further proceedings.

"[W]hen reviewing a motion for summary judgment, the Supreme Court views the evidence in a light most favorable to the party opposing the motion and gives that party the benefit of all reasonable inferences deducible from that evidence. [Citation omitted.]" *Nu-Dwarf Farms v. Stratbucker Farms*, 238 Neb. 395, 397, 470 N.W.2d 772, 775 (1991). Accordingly, we review the evidence in the light most favorable to the Flammes and give them the benefit of all reasonable inferences deducible from that evidence.

On November 27, 1989, the Flammes filed their original petitions as separate actions in the district court for Colfax County. In their third amended petitions, which were filed on September 17, 1990, the Flammes alleged that on the morning of November 28, 1985, they were involved in an automobile accident near Howells, Nebraska; that the accident was caused by the negligence of Jennifer Krenzien, who "rear-ended" a vehicle driven by the Flammes' son in which the Flammes were passengers; that as a direct and proximate result of the accident, each of the Flammes suffered damages in excess of $150,000;

and that Krenzien's total automobile liability coverage was in the amount of $100,000 per person. The car in which the Flammes were riding was registered in their names. In the third amended petitions, it was also alleged that Cornhusker Casualty Company (Cornhusker) issued automobile policy No. BAP-4381 to Flamme Bros., Inc., Donald and Veronica Flamme, and Vernon and Sharon Flamme; that the policy provided underinsured motorist coverage in the amount of $50,000 per person; that the policy was in effect on November 28, 1985; and that each of the plaintiffs was an insured under the policy. In their answers to the second amended petitions, the defendants admitted that each of the plaintiffs would qualify as an insured under the policy.

Policy No. BAP-4381 was issued for the period of December 21, 1984, to December 21, 1985, and an endorsement attached to that policy, "CA 2X 17 (Ed. 01 78)," was the only endorsement available from Cornhusker which provided any type of underinsured motorist insurance. In their answers, the defendants stated that "there is no specific language defining underinsured motorist but that . . . a vehicle [is defined] as being underinsured when the liability bond or policy provide[s] at least the applicable statutory limits but that the limits are less than the Cornhusker . . . policy." The endorsement to the policy specifically provides in relevant part:

> "**Uninsured motor vehicle**" means a land motor vehicle or trailer:
>     . . . .
>     b. For which the sum of all liability bonds or policies at the time of an **accident** provides at least the amounts required by the applicable law where a covered **auto** is principally garaged but their limits are less than the limit of this insurance . . . .

The endorsement further provides, "If this insurance provides a limit in excess of the amounts required by the applicable law where a covered **auto** is principally garaged, **we** will pay only after all liability bonds or policies have been exhausted by judgments or payments." The endorsement also stated, "Any amount payable under the insurance shall be reduced by . . . [a]ll sums paid by or for anyone who is legally

responsible, including all sums paid under the policy's LIABILITY INSURANCE." At the time of the relevant policy period, the Legislature had not yet enacted the Underinsured Motorist Insurance Coverage Act, see Neb. Rev. Stat. §§ 60-571 to 60-582 (Reissue 1988), which was passed in 1986.

In affidavits received in evidence, the Flammes stated that after each of them read a magazine article concerning underinsured motorist coverage, they met with Grueber to discuss their automobile insurance; that the magazine article recommended that one purchase a policy which would pay over and above the limits of coverage of the underinsured motorist; and that Grueber informed them on November 14, 1984, that their policy contained $50,000 of underinsured motorist coverage over and above the limits of insurance of any underinsured motorist. The Flammes also deposed the same. An entry in Mrs. Flamme's diary and a notation made by her on the Flammes' policy corroborate the Flammes' allegations. Grueber denied having any conversations regarding underinsured motorist insurance with either of the Flammes.

At the time of trial, Grueber had been in the insurance business since his graduation from college in 1971, was licensed by the state to sell insurance, and attended periodic insurance seminars and classes. Wolf Insurance Agency had been selling insurance to the Flammes since at least 1971 and offered insurance coverage from carriers other than Cornhusker.

The Flammes alleged in their respective third amended petitions that demand was made upon Cornhusker under the policy, but that Cornhusker denied the claim because Cornhusker claimed the coverage under Krenzien's automobile liability policy was greater than the underinsured motorist coverage afforded by the Cornhusker policy. The Flammes each brought a separate action against Cornhusker, but the record is silent as to the outcome of those lawsuits.

In their affidavits, each of the Flammes declared that had Grueber advised them otherwise, (1) they would have asked Grueber to have the policy drafted so as to provide underinsured motorist insurance over and above the limits of the underinsured motorist's insurance; (2) if that type of coverage was not provided by Cornhusker, they would have

requested that Grueber locate a company which did provide such coverage; and (3) if Grueber was unable to locate such a company, they would have requested that he issue the Cornhusker policy with underinsured motorist coverage limits of at least $250,000.

The Flammes asserted in each of their third amended petitions that Grueber represented to them that the underinsured motorist coverage in their insurance policy provided an additional $50,000 of coverage per person regardless of the amount of insurance carried by the party who injured them and that during that same conversation, the Flammes confirmed that they wanted an insurance policy that provided $50,000 of underinsured motorist coverage over and above any coverage that might be available from a tort-feasor. It was further alleged that the defendants were negligent in that they failed to place the underinsured motorist coverage in the form that Grueber represented would be included in the policy. Thus, the Flammes' third amended petitions asserted two grounds for recovery: (1) negligent failure to obtain the requested underinsured coverage and (2) negligent misrepresentation regarding the coverage provided by the policy. The parties on appeal have treated each case as presenting those two grounds for relief. This court will accordingly confine its analysis to those two issues. Although the third amended petitions were filed after the summary judgment motions were filed, the petitions were included in the exhibits received in evidence.

Following a hearing, the defendants' motions for summary judgment were sustained. The Flammes' motions for a new trial were overruled, and they timely appealed to this court. The parties stipulated to consolidate the cases on appeal, which stipulation was allowed.

## I. SUMMARY JUDGMENT

Summary judgment is properly granted only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue concerning any material fact or as to the ultimate inferences deducible from such facts and that the moving

470

party is entitled to judgment as a matter of law. [Citation omitted.]

*Krohn v. Gardner*, 238 Neb. 460, 462, 471 N.W.2d 391, 394 (1991).

Moreover, a party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law if the evidence presented for summary judgment remains uncontroverted. After the moving party has shown facts entitling it to judgment as a matter of law, the opposing party has the burden to present evidence showing an issue of material fact which prevents a judgment as a matter of law for the moving party. [Citations omitted.]

*Flynn v. Bausch*, 238 Neb. 61, 65-66, 469 N.W.2d 125, 128 (1991).

## II. NEGLIGENT FAILURE
## TO OBTAIN COVERAGE

An insurance agent or broker who agrees to obtain insurance for another but negligently fails to do so is liable for the damage proximately caused by such negligence; the measure of damages is the amount that would have been due under the policy if it had been obtained by the agent or broker. *Kenyon & Larsen v. Deyle*, 205 Neb. 209, 286 N.W.2d 759 (1980). The defendants assert that the Flammes cannot recover because they failed to show that they requested underinsured motorist coverage in excess of the liability insurance of an underinsured motorist, as alleged in the Flammes' third amended petitions.

Mrs. Flamme's deposition reflects that the Flammes met with Grueber to discuss the terms of the policy approximately 4 to 6 weeks before the time for renewing the policy, that Grueber's misrepresentation occurred in the course of his explanation of the policy, and that she could not recall if it was made in response to a specific question, although she posed a lot of questions to Grueber. When she was asked if she specifically asked Grueber for excess underinsured motorist coverage, Mrs. Flamme asserted that she could not recall. No other evidence

was offered on this point in either of the Flammes' cases.

In *Polski v. Powers*, 221 Neb. 361, 364, 377 N.W.2d 106, 108 (1985), this court held, "We believe it would be an unreasonable burden to impose upon insurance agents a duty to anticipate what coverage an individual should have, absent the insured's requesting coverage in at least a general way." There is no evidence in this case that the Flammes requested underinsured motorist coverage over and above someone else's liability insurance or that Grueber agreed to obtain such coverage. Therefore, Grueber and his agency can hardly be held liable for failing to obtain such coverage.

The defendants' argument, however, holds no force with respect to the Flammes' claim of negligent misrepresentation. As will be discussed, such a cause of action does not require a request to obtain certain coverage. If an insurance agent or broker undertakes to advise an insured, the agent or broker must use reasonable care to provide accurate information. See *Trotter v. State Farm*, 297 S.C. 465, 377 S.E.2d 343 (1988). In this case, the Flammes sought Grueber's advice in order to make a determination as to the renewal of their policy. There is evidence that he represented the underinsured motorist insurance to be of a certain type. Grueber had a duty of reasonable care to provide correct information in that respect.

### III. NEGLIGENT MISREPRESENTATION

In *Bayer v. Lutheran Mut. Life Ins. Co.*, 184 Neb. 826, 172 N.W.2d 400 (1969), this court imposed liability when an insured relied upon an insurance company's general agent's misrepresentation. It is well established that an insurance agent or broker may be held liable for a negligent misrepresentation made to an insured. See, e.g., *Connell v. State Farm Mut. Auto Ins. Co.*, 482 So. 2d 1165 (Ala. 1985); *Clary Ins. Agcy. v. Doyle*, 620 P.2d 194 (Alaska 1980); *Runia v. Marguth Agency, Inc.*, 437 N.W.2d 45 (Minn. 1989); *Rotanelli v. Madden*, 172 A.D.2d 815, 569 N.Y.S.2d 187 (1991); Annot., 72 A.L.R.3d 704 (1976).

Mr. Flamme testified that he relied on Grueber's representation as to what was provided in the instant insurance policy and that he did not know if he completely read the policy.

He did not look at the endorsement at issue until 1990 and never discussed it with Grueber or Jeff Striegel, who worked for Cornhusker. Mrs. Flamme stated that she "would check the vehicle list and go over the numbers" and that she did not read the whole policy. She further reported that she did not read the instant endorsement until shortly before her deposition was taken. No attorney reviewed the policy for the Flammes. The defendants contend that the Flammes' failure to read their policy, including the endorsement, bars their recovery.

It is true that this court has held in other contexts that one who enters into a contractual relationship is charged with knowledge of the contents of the contract and is bound thereby. See, e.g., *Nichols v. Ach*, 233 Neb. 634, 447 N.W.2d 220 (1989). With respect to insurance policies, this court has held: "An insured has no right to rely upon an agent's patently absurd interpretation of a policy. He ordinarily may rightfully rely, however, upon an agent's interpretation that is plausible and not in patent conflict with the printed policy although legally untenable. [Citation omitted]." *Bayer, supra* at 830, 172 N.W.2d at 402. In an action to reform an insurance contract because of an agent's misrepresentation, this court held, "The single circumstance that the insured failed to examine his policy prior to the loss is ordinarily insufficient for denial of relief. [Citations omitted.]" *Heikes v. Farm Bureau Ins. Co.*, 181 Neb. 827, 830, 151 N.W.2d 336, 339 (1967). Accord, *Mogil v. Maryland Casualty Co.*, 147 Neb. 1087, 26 N.W.2d 126 (1947); *Davis v. Highway Motor Underwriters*, 120 Neb. 734, 235 N.W. 325 (1931).

It is unlikely that a reasonable reading of the policy would have disclosed the falsity of Grueber's alleged representation. Several steps are required in locating the language which provides the coverage at issue. First, the underinsured motorist insurance is provided by an endorsement to the policy, not the policy itself. Second, underinsured motorist coverage is never specifically referred to in the endorsement. Instead, underinsured motorist insurance is provided by defining "uninsured motor vehicle" in such a way as to provide underinsured motorist coverage. As stated, the endorsement to the policy provides in pertinent part:

"**Uninsured motor vehicle**" means a land motor vehicle or trailer:

. . . .

b. For which the sum of all liability bonds or policies at the time of an **accident** provides at least the amounts required by the applicable law where a covered **auto** is principally garaged but their limits are less than the limit of this insurance . . . .

Although the endorsement states that "[a]ny amount payable under the insurance shall be reduced by . . . [a]ll sums paid by or for anyone who is legally responsible," the endorsement also provides that "[i]f this insurance provides a limit in excess of the amounts required by the applicable law where a covered **auto** is principally garaged, **we** will pay only after all liability bonds or policies have been exhausted by judgments or payments." In view of the convoluted method by which underinsured motorist coverage was provided by Cornhusker, particularly by providing coverage via a definition which does not even mention the term "underinsured," it is doubtful that if a reasonable person had read the endorsement's seemingly contradictory provisions, that person would have understood that it did not provide coverage in excess of the tort-feasor's liability insurance. Therefore, the Flammes could reasonably rely on Grueber's plausible interpretation of the endorsement. See, e.g., *Chandler v. Jones*, 532 So. 2d 402 (La. App. 1988) (an insured should not be held to have read and understood complex and often confusing intricate detailed provisions of an insurance policy); *Giles v. Lanford & Gibson, Inc.*, 285 S.C. 285, 328 S.E.2d 916 (1985) (insured could not have deciphered the language sufficiently to conclude the policy provided a different coverage than that represented by an insurance agent).

There was evidence that the endorsement may have been included in the policy since at least 1980. Nonetheless, that fact does not make the Flammes' failure to read the endorsement any more culpable. As the previous discussion demonstrates, there is nothing to indicate that an insured would have understood the endorsement any better in 1980 than in 1984. More importantly, it was not until November 1984 that the

alleged misrepresentation was made. It was at that time that the terms of underinsured motorist coverage became relevant in this case.

The defendants next contend that the Flammes failed to show proximate cause because they could not have obtained the desired coverage regardless of Grueber's representation. For that contention, they rely on Kenneth Dietz' and Grueber's affidavits. Dietz, an employee of Cornhusker, asserted in his affidavit received in evidence that Cornhusker did not write any insurance policy which provided $50,000 of underinsured motorist coverage over and above any coverage that might be available. Grueber's affidavit, also received in evidence, states that "there was no underinsured motorist coverage available through any insurance company that affiant worked for during 1984 through 1985 that would have provided underinsured motorist coverage which would have been excess over and above the other person's liability coverage."

Even if Dietz' and Grueber's affidavits are accepted as true, each of the Flammes' affidavits reflects that if Grueber could not have redrafted the Cornhusker policy to correspond with their understanding or if Grueber could not have located another carrier that would provide underinsured motorist coverage over and above a tort-feasor's liability, they would have requested that he issue the Cornhusker policy with underinsured motorist coverage limits of at least $250,000. Therefore, the evidence reflects a material issue of fact of whether the Flammes could have obtained the coverage. As stated, summary judgment may not be used for disposing of material questions of fact.

The judgments are reversed and the causes remanded for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

SHANAHAN, J., concurring.

Since the majority has correctly concluded that summary judgment was improperly granted, I concur that the district court's judgment must be reversed. However, an aspect of the majority opinion should be emphasized and even underscored as an innovation in Nebraska law—expansion or enlargement

of the cause of action for misrepresentation of a material fact, sometimes called "fraudulent misrepresentation."

If some have not taken note, as the result of the *Flamme* decision today, Nebraska recognizes a cause of action for "negligent misrepresentation," which might be more accurately labeled "misrepresentation through negligence," when one's negligence causes or results in misrepresentation of a material fact. The majority states that a cause of action for "a negligent misrepresentation" is "well established," and then refers to decisions in other jurisdictions which recognize actionable negligent misrepresentation. "Well established" is at the most misleading and at the least an inaccurate descriptive reference to "negligent misrepresentation," which has never inhabited Nebraska law before the *Flamme* decision. The rather casual introduction of "negligent misrepresentation" as a cause of action in Nebraska is attributable to the majority's failure to mention the elements of actionable misrepresentation, before and after the *Flamme* decision. Today's innovation for Nebraska, recognition of actionable negligent misrepresentation, is appropriately described by paraphrase of a Churchillian characterization: This court has stumbled over the newly expanded cause of action for negligent misrepresentation, but hastily picked itself up and hurried on as if nothing had happened. On the other hand, if aware of the *Flamme* consequences, this court is regrettably reticent about enunciating an innovation which will undoubtedly have a substantial impact on causes of action for fraudulent misrepresentation in Nebraska.

Before today, deceit or recklessness was necessary for actionable fraudulent misrepresentation. As we stated in *Edwin Bender & Sons v. Ericson Livestock Comm. Co.*, 228 Neb. 157, 165-66, 421 N.W.2d 766, 771 (1988):

> To recover in an action for fraud based on a misrepresentation of fact, a plaintiff must prove that (1) the defendant made a representation of a material fact; (2) the representation was false; (3) the representation, when made, was known to be false or was made recklessly as a positive assertion without knowledge concerning the truth of the representation; (4) the representation was made

with the intention that the plaintiff would rely on it; (5) the plaintiff reasonably relied on the representation; and (6) as the result of such reliance, the plaintiff suffered damage.

See, also, *Alliance Nat. Bank v. State Surety Co.*, 223 Neb. 403, 390 N.W.2d 487 (1986).

In *Edwin Bender & Sons, supra*, a jury question existed, when, in connection with Bender's purchase of heifers, Ericson, without knowledge of the heifers' condition, represented to Bender that the cattle were "open," i.e., not pregnant, whereas the cattle were pregnant, which resulted in damages to Bender, who had relied on the misrepresentation as an inducement for the sale. In a similar vein, an actor's statement of fact, made in the absence of knowledge, has satisfied the element of "recklessness" necessary for actionable fraud by misrepresentation of a material fact. See, *Willard v. Key*, 83 Neb. 850, 120 N.W.2d 419 (1909) (an actor, without knowing the number of acres in a parcel of real estate, represented an incorrect acreage); *Campbell v. C & C Motor Co.*, 146 Neb. 721, 21 N.W. 427 (1946) (a statement made without knowledge of truth is made recklessly).

Nevertheless, the plain fact is that for quite some time this court has endeavored, and at times has struggled, to characterize as "recklessness" that conduct which is more appropriately within the boundaries of "negligence."

As Prosser has noted, "A representation made with an honest belief in its truth may still be negligent, because of lack of reasonable care in ascertaining the facts, or in the manner of expression, or absence of the skill and competence required by a particular business or profession." Prosser and Keeton on the Law of Torts, *Misrepresentation and Nondisclosure* § 107 at 745 (5th ed. 1984).

In *Springdale Gardens v. Countryland Dev., Inc.*, 638 S.W.2d 813, 816 (Mo. App. 1982), the court observed:

The elements of negligent misrepresentation differ from those of fraudulent misrepresentation in one major respect: while the latter requires proof that the defendant knew the statement was untrue or was reckless as to whether the statements were true or false, the former

merely requires proof that the defendant failed to exercise reasonable care or competence to obtain or communicate true information.

See, also, Restatement (Second) of Torts § 552, comment *a.* (1977) (unlike fraudulent misrepresentation, negligent misrepresentation imposes liability when there is good faith, i.e., absence of an intent to deceive, coupled with negligence).

The tort of negligent misrepresentation was recognized in *Ryan v. Kanne,* 170 N.W.2d 395 (Iowa 1969), when the Iowa Supreme Court decided that "an accountant should be liable in negligence for careless financial misrepresentation relied upon by actually foreseen and limited classes of persons." *Id.* at 402. In *Ryan,* the court also "recognize[d] that the same rule may be applicable in other recognized professions, such as abstracters and attorneys." *Id.* Later, in *Beeck v. Kapalis,* 302 N.W.2d 90, 97 (Iowa 1981), the Iowa Supreme Court set out the elements for a recovery based on negligent misrepresentation by one who is engaged in a profession or business involving dissemination of information:

> "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information. . . ."

Furthermore, Iowa is not alone in recognizing a cause of action for negligent representation. See, *Guardian Const. v. Tetra Tech Richardson,* 583 A.2d 1378 (Del. 1990); *Gilliland v. Elmwood Properties,* 301 S.C. 295, 391 S.E.2d 577 (1990); *Lund v. North Dakota State Highway Dept.,* 403 N.W.2d 25 (N.D. 1987); *Duffy v. Brown,* 708 P.2d 433 (Wyo. 1985); *State Bank of Townsend v. Maryann's, Inc.,* 204 Mont. 21, 664 P.2d 295 (1983); *Moore v. Kluthe & Lane Ins. Agency,* 89 S.D. 419, 234 N.W.2d 260 (1975); *Broderick Inv. v. Strand Nordstrom et al.,* 794 P.2d 264 (Colo. App. 1990); *Springdale Gardens v. Countryland Dev., Inc., supra.* See, also, Restatement (Second) of Torts § 552 (1977).

Consequently, a cause of action for negligent representation is a realistic and logical development of Nebraska law. However, the majority should have emphasized the change in Nebraska law and thereby provided clarity and direction, not confusion from uncertainty, pertaining to actionable misrepresentation. For example, concerning "fraudulent misrepresentation," NJI2d 9.01 refers to a representation made either with knowledge that the representation is false or made recklessly as a positive assertion in the absence of the actor's knowledge concerning the represented fact. See, also, NJI2d 15.08 (definition of fraudulent representation). Obviously, "recklessness," as a disregard for consequences, is quite different from "negligence," the lack of reasonable care. Hence, today's decision blurs some of the law governing actions for misrepresentation of a material fact. Also, admissibility of evidence may now be considered in light of the law on negligence rather than the more restrictive standard required for "recklessness."

Nonetheless, while there may still be cases based on deceit or recklessness in reference to misrepresentation of a material fact, this court has correctly chosen to also allow recovery for negligent misrepresentation as a cause of action in Nebraska.