**John D. BUSH, Appellant**
**(Plaintiff Below),**

v.

**MAYERSTEIN–BURNELL FINANCIAL SERVICES, INC., James R. Ransom, and Nancy Barbour, Appellees (Defendants Below),**

**Washington National Insurance Company, Nominal Appellee (Co-Defendant Below).**

**No. 2–1285–A–385.**

Court of Appeals of Indiana, Second District.

October 7, 1986.

Ordered Published Nov. 3, 1986.

Sharon Funcheon Murphy, Bartlett & Robb, Lafayette, for appellant.

John C. Duffey, Stuart & Branigin, Lafayette, for appellees.

SULLIVAN, Judge.

Plaintiff-appellant John D. Bush (Bush) appeals a summary judgment in favor of Mayerstein-Burnell Financial Services, Inc. (MBFS), James R. Ransom (Ransom) and Nancy Barbour (Barbour), defendants below. The controversy involves a denial of coverage under a temporary medical insurance policy.

We affirm.

Viewing the relevant facts most favorable to Bush, the non-moving party below, it appears that in the summer of 1983 Bush was seeking new employment. Bush was aware that his current major medical insurance coverage would terminate upon leaving his employment. He contacted his parents and asked them to make inquiries on his behalf regarding temporary major medical coverage.

Bush's father went to MBFS where Ransom, the president of MBFS, informed him that MBFS sold a temporary major medical policy provided by Washington National Insurance Company (a defendant below but not a party to this appeal). Bush's father reviewed a brochure provided by Ransom detailing the Washington National coverage and discussed the policy with Bush. Bush's father went to MBFS on October 10, 1983, to purchase the Washington National policy for his son. Barbour, Ransom's administrative assistant, helped Bush's father fill out the application for the

policy by asking him the questions and filling in the answers for him.

Question 2 on the application asked in pertinent part "Do you or any listed dependent(s) now have hospital or medical insurance . . .?" Bush's father answered no. There was in effect at that time a Farm Bureau "Hospital and Surgical Expense Policy" covering Bush, which had been purchased by Bush's parents when Bush was a child. Immediately below Question 2 was a line stating "If this question is answered YES, state name of person(s) to whom answer applies (such person is excluded from coverage.)" In addition, the paragraph attesting to the truthfulness of the information provided on the application contained the following line. "I also understand that each person named in Question 2 above is excluded from coverage under the policy." Bush's father signed the application on behalf of his son.

In January of 1984, Bush's mother stopped by the offices of MBFS to purchase a renewal of the Washington National policy for her son. Barbour had used the information provided by Bush's father to fill out the second application. When Bush's mother arrived, Barbour directed her attention to everything that was on the application. The answer to Question 2 remained "no" although Bush's Farm Bureau policy was still in effect. Bush's mother signed the renewal application on behalf of her son.

On January 30, 1984, Bush was hospitalized for treatment of a staph infection. He incurred bills in excess of $36,000. Washington denied his claim for benefits because Bush was covered by the Farm Bureau policy when application was made for the Washington National policy. The Farm Bureau policy covered only $1,000 of Bush's hospital bill.

Bush brought suit against Washington National and against MBFS, Ransom and Barbour claiming they were negligent in procuring the Washington National policy for Bush. The trial court granted the sum-

mary judgment motion of MBFS, Ransom and Barbour on September 26, 1985, and Bush perfected this appeal.

We paraphrase and condense the issues presented by Bush as follows:

(1) Whether the trial court erred in concluding that there were no genuine issues of material fact concerning the alleged negligence of MBFS. Ransom and Barbour;[1]

(2) Whether this issue of the potential ambiguity of the insurance application was an issue brought before the court by the motion for summary judgment.

I

■■■ Bush argues that the term "hospital or medical expense insurance" as used in the Washington National insurance application was ambiguous under the facts of this case and that MBFS was in a position to prevent the ambiguity. In considering this argument, we first note that terms are ambiguous only if reasonable men would find the terms susceptible to more than one interpretation. *Young v. Van Zandt* (1983) 1st Dist.Ind.App., 449 N.E.2d 300. Where the terms are not ambiguous, the meaning of the terms is a matter for the court to decide as a question of law. *Fort Wayne Cablevision v. Indiana & Michigan Electric Co.* (1983) 3d Dist.Ind.App., 443 N.E.2d 863.

■ The Farm Bureau policy which covered Bush was titled "Hospital and Surgical Expense Policy." Thus, Bush's basic argument is that it was reasonable to assume that his "Hospital and Surgical Expense Policy" was not "hospital or medical expense insurance." The argument seems wholly unsupportable at first blush, yet Bush attempts to buttress it by pointing to the fact that the Farm Bureau policy was a specific indemnity policy rather than a major medical policy.

1. Bush does not argue that Ransom or Barbour is liable for negligence in an individual ca-

pacity. The argument is confined to the liability of MBFS.

We do not accept this reasoning. Hospital insurance contained in a specific indemnity policy is still hospital insurance. We do not believe it was reasonable for Bush or his parents to assume that Question 2 on the application referred only to major medical insurance.

Bush cites two cases in support of his ambiguity argument. In *Cason v. Pan-American Life Insurance Co.* (1976) La. App., 338 So.2d 138, the Louisiana Court of Appeal found the term "hospital insurance" to be ambiguous, while in *Goldstein v. Occidental Life Ins. Co. of California* (1971) 108 R.I. 154, 273 A.2d 318, the Supreme Court of Rhode Island held that the term "accident and sickness insurance" was ambiguous.

The case before us is distinguishable. In *Cason,* the other policies owned and undisclosed by the plaintiff insured were "cash" policies designed to make up for lost income due to hospitalization rather than to cover hospitalization expenses. *Cason, supra,* at 139. In *Goldstein,* the application in question referred to three distinct types of insurance: life, accident and sickness, and medical service. Thus, it was reasonable for the plaintiff to assume that her major medical insurance was medical service insurance and not to include that coverage under a question asking her to list "Accident and Sickness Insurance now in force."

In this case, the application made reference to no other types of insurance. The question asked "Do you or any listed dependent(s) now have hospital or medical insurance ...?" Bush was insured by a "Hospital and Surgical Expense Policy." We hold that Question 2 on the Washington National insurance application was not ambiguous, and the trial court was correct in so finding as a matter of law.

As a necessary corollary, we reject Bush's argument that MBFS was negligent in failing to prevent the alleged ambiguity. However, Bush also argues that MBFS was negligent in its handling of the application procedure.

Bush first points to the fact that Barbour, an administrative assistant not licensed to sell insurance in Indiana, was the only person to aid Bush's parents in filling out the application. The application contained blanks for filling in the name, sex, birth date and address of the applicant. In addition, the application contained only two questions, the first asking if the coverage applied for was to replace any hospital or medical expense insurance and the second being the allegedly ambiguous Question 2. Because we have determined that Question 2 was not ambiguous, we cannot say that there is a genuine issue of fact with respect to whether MBFS was negligent in not having a licensed insurance agent aid Bush's parents in completing such an uncomplicated form.

■ Bush also argues that MBFS was negligent in not explaining the term "hospital or medical expense insurance" to Bush's parents even though they "obviously misunderstood its meaning." Appellant's Brief at 17. As earlier noted the term is unambiguous. Thus, MBFS had no reason to speculate upon the unreasonable interpretation Bush's parents applied to the term. We cannot place the burden of explaining unambiguous terms upon an insurance agent absent some showing that the prospective insured asked for an explanation of an unambiguous term. If Bush's parents had any doubt as to whether their son's "Hospital and Surgical Expense Policy" was "hospital or medical expense insurance" they could have and should have made inquiry.

■ Finally, Bush argues that MBFS was negligent in not providing Bush's parents with information regarding other temporary health insurance policies which did not include forfeiture provisions if other insurance was in effect when the loss occurred. However, we note that MBFS had no reason to believe that Bush's needs would be better met by a different available insurance program. The answers provided by Bush's parents upon the Washington National application gave no such indication. An insurance agent is not liable

when the insured's loss is due to the insured's own act or omission. *Stockberger v. Meridian Mutual Ins. Co.* (1979) 3d Dist., 182 Ind.App. 566, 395 N.E.2d 1272. Here, Bush's loss was attributable wholly to his failure, through his parents, to indicate the existence of the Farm Bureau policy. We find no fact to permit a reasonable conclusion that MBFS was negligent in not detecting and correcting this error. *See* 16A Appleman, *Insurance Law and Practice* § 8836 (1981) ("[A]n agent ordinarily does not have to correct errors of the insured.") The trial court was correct in granting summary judgment for MBFS.

## II

■ Bush presents what appears to be an alternative argument. He asserts that any issue as to an ambiguity in the application exists solely between Bush and Washington National and has no bearing as to possible liability for negligence by MBFS.

This argument is without merit. Bush raised the issue concerning the ambiguity of the application in his brief in opposition to Summary Judgment. Also, as Bush's appellate brief makes clear, Bush premised MBFS's negligence at least partially on MBFS's failure to clarify the alleged ambiguity in the application. Thus, the issue was before the trial court as to MBFS.

■ We understand Bush's concern regarding the trial court's finding on this issue. Washington National, the insurer, remains a defendant below, and our holding that Question 2 is unambiguous as a matter of law could be interpreted as closing all avenues of recovery against the insurer. Such result might seem extremely harsh in light of the fact that there is no indication that the misstatements made by Bush's parents were intended to deceive the insurer, or that the misrepresentation was material.[2] However, we are not convinced that our holding necessarily pre-

cludes recovery against the insurer. In any event that issue is not before us. We hold only that Bush may not recover against MBFS, Ransom and Barbour. Accordingly, the trial court's summary judgment as to those parties is affirmed.

HOFFMAN (participating by designation) and SHIELDS, JJ., concur.

---

**2.** A representation is material if the fact represented reasonably enters into and influences insurer's decision whether to issue the policy or charge a higher premium. *American Family*