RONALD DAHLKE, DOING BUSINESS AS PIONEER COATING, APPELLANT, V. JOHN F. ZIMMER INSURANCE AGENCY, INC., DOING BUSINESS AS ZIMMER-BLANC INSURANCE AGENCY, INC., AND GALE WILLIAMS, APPELLEES.

515 N.W.2d 767

Filed May 6, 1994.    No. S-92-501.

Elaine A. Waggoner, of Waggoner Law Office, for appellant.

Randall L. Goyette and David D. Zwart, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ.

WHITE, J.

Ronald Dahlke sued his insurance agent, Gale Williams, and Williams' employer, John F. Zimmer Insurance Agency, Inc., for breach of agency and negligence. The court granted summary judgment in favor of Williams and Zimmer Insurance, and Dahlke appealed. Under our authority to regulate the caseloads of the appellate courts of this state, we removed the matter from the Nebraska Court of Appeals to this court. We reverse and remand.

Dahlke owns and operates a sole proprietorship known as Pioneer Coating, which provides roofing, construction, and waterproofing services. One of the hazards of Dahlke's business is "overspray": when Dahlke applies a foam or polyurethane coating to a roof using a sprayer similar to a paint sprayer, some of the coating spray can drift away from the roof and settle onto other objects, causing property damage. Dahlke is insured against damage caused by overspray. Since 1980, Dahlke has obtained his insurance through Williams.

In 1984, Dahlke's business suffered an overspray incident. The overspray damaged four to six cars. The damage was covered by insurance, and Dahlke paid a single deductible. The parties have referred to this as a "per-occurrence" deductible, and we will do likewise.

In 1988, Dahlke's business suffered another overspray incident. The insurer settled 25 claims. The insurer then informed Dahlke that he would have to pay a separate deductible for each damaged car. The parties have referred to this as a "per-claim" deductible, and we will again do likewise. The insurer eventually billed Dahlke for $10,835.47.

Dahlke filed suit against Williams and Zimmer Insurance. In his petition, Dahlke asserted that Williams had "breached their agency agreement" by failing to obtain proper insurance and by failing to disclose material information regarding the deductible. At deposition, Dahlke testified that he had never heard of the difference between a per-occurrence and a per-claim deductible until his discussions with the insurance

company following the 1988 overspray incident. Dahlke specifically testified that he and Williams did not discuss the various types of deductibles. Dahlke also testified that if he had known the difference, he would never have purchased insurance with a per-claim deductible.

Dahlke testified that the policy in force at the time of the 1988 overspray incident was obtained through the following transactions. In the fall of 1988, Dahlke and Williams discussed renewing Dahlke's policy. Williams informed Dahlke that the insurer would not renew the policy because the insurer would no longer cover roofing companies. Williams also informed Dahlke that he would look for a new policy, would obtain price quotes, and would present the package to Dahlke. Dahlke told Williams that he wanted a $1,000 deductible, but the two did not otherwise discuss any new policy terms. After further conversations, a policy was selected and Dahlke "had to sign something to get it in force." In late October, Williams informed Dahlke that the policy had been put in force. At the time of the 1988 overspray incident, Dahlke had received an insurance certificate but had not received a copy of the policy.

Williams and Zimmer Insurance filed a motion for summary judgment, and the trial court granted the motion. Dahlke appealed. Dahlke asserts that the trial court erred in granting summary judgment.

Summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences to be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Dalton Buick v. Universal Underwriters Ins. Co., ante* p. 282, 512 N.W.2d 633 (1994); *Hillie v. Mutual of Omaha Ins. Co., ante* p. 219, 512 N.W.2d 358 (1994); *Hawkins Constr. Co. v. Reiman Corp., ante* p. 131, 511 N.W.2d 113 (1994). On appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom judgment was granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Rowe v. Allely*, 244 Neb. 484, 507 N.W.2d 293 (1993); *Riley v. State*, 244 Neb. 250, 506 N.W.2d 45 (1993).

Dahlke first contends that Williams failed to procure the proper insurance. An insurance agent who agrees to obtain insurance for another but negligently fails to do so is liable for the damage proximately caused by such negligence; the measure of damages is the amount that would have been due under the policy if it had been obtained by the agent. *Flamme v. Wolf Ins. Agency*, 239 Neb. 465, 476 N.W.2d 802 (1991); *Kenyon & Larsen v. Deyle*, 205 Neb. 209, 286 N.W.2d 759 (1980).

In his petition, Dahlke alleged that in the summer of 1988 he had asked Williams to procure insurance with a per-occurrence deductible. In their answer, Williams and Zimmer Insurance denied that Dahlke had requested a per-occurrence deductible and alleged that the policy conformed to Dahlke's requested coverage. Based on this apparent dispute, Dahlke argues that one issue of material fact is "what specific instructions [Dahlke gave] to [Williams] in regard to procurring [sic] insurnace [sic]." Brief for appellant at 4.

Despite Dahlke's allegations and argument, the record reflects that Dahlke failed to advise Williams regarding the type of deductible he wanted. Dahlke testified at deposition that when he sought Williams' assistance in obtaining insurance, Dahlke told Williams that he wanted a $1,000 deductible. According to Dahlke, the two men did not discuss any aspects of the deductible other than the dollar amount. Dahlke also testified that at the time he sought Williams' assistance, he had never discussed the difference between per-claim and per-occurrence deductibles with Williams or anyone else.

Nebraska law on this issue is well settled. When an insured asks an insurance agent to procure insurance, the insured has a duty to advise the insurance agent as to the desired insurance. *Polski v. Powers*, 221 Neb. 361, 377 N.W.2d 106 (1985); *Manzer v. Pentico*, 209 Neb. 364, 307 N.W.2d 812 (1981); *Kenyon, supra*. An insurance agent has no duty to anticipate what coverage an insured should have. *Flamme, supra*; *Polski, supra*.

Dahlke had a duty to inform Williams of the deductible he wished to obtain. Having failed to inform Williams, Dahlke cannot now complain that Williams failed to procure the

proper type of deductible. Williams obtained the type of insurance he was instructed to procure. Accord *Flamme, supra* (agent not liable for negligent failure to procure coverage where insureds failed to show that they had requested coverage).

Dahlke next contends that Williams was negligent in failing to inform Dahlke that his deductible was per claim. In response, Williams and Zimmer Insurance argue that Dahlke did not request a specific type of deductible, that Dahlke had previously obtained policies with a per-claim deductible, and that Dahlke failed to inquire as to his deductible.

Dahlke admitted that during the two policy periods prior to the 1988 overspray incident, his insurance polices included a per-claim deductible. Dahlke also admitted that he customarily filed his insurance policies without reading them. Dahlke stated that even if he had read them, he would not have understood the deductible provisions. Dahlke also stated that because he had paid a per-occurrence deductible following the 1984 overspray, he assumed that his deductible had continued to be per occurrence.

We are thus faced with two issues. First, did Williams have a duty to explain that Dahlke's deductible changed from per occurrence to per claim? Second, if Williams had such a duty, is he nevertheless insulated from liability due to Dahlke's failure to read his policies? We address each issue in turn.

The parties have cited no Nebraska cases discussing an agent's duty to explain policy terms, and we have found none. However, other jurisdictions have addressed whether such a duty exists.

Courts which have addressed the issue generally take one of two positions. Some jurisdictions flatly declare that an agent has no duty to explain policy terms to an insured. See, *Greenway v. Insurance Co.*, 35 N.C. App. 308, 241 S.E.2d 339 (1978) (absent a request for explanation, agent has no duty to inform an insured as to all parts of his policy); *Heritage Manor of Blaylock v. Petersson*, 677 S.W.2d 689 (Tex. App. 1984). Accord, *Bush v. Mayerstein-Burnell Financial Services*, 499 N.E.2d 755 (Ind. App. 1986) (agent has no duty to explain unambiguous terms absent a request for an explanation); *Banker v. Valley Forge Ins. Co.*, 363 Pa. Super. 456, 526 A.2d

434 (1987) (where a policy provision is clear and unambiguous, agent has no duty to explain all of the hypothetical consequences). Other jurisdictions take a more moderate route and find that an agent's duty to explain policy terms can be triggered by certain circumstances. See, *Melin v. Johnson*, 387 N.W.2d 230 (Minn. App. 1986) (when an agent knows the insured's expectations for coverage, the agent has a duty to inform the insured of any policy provisions which will limit the expected coverage); *Precision Castparts v. Johnson & Higgins of Or.*, 44 Or. App. 739, 607 P.2d 763 (1980) (when an agent presents an insured with a number of policies for consideration, the agent has a duty to inform the insured regarding the differences between the policies under consideration). See, also, *Coe v. Farmers New World Life Ins. Co.*, 209 Cal. App. 3d 600, 257 Cal. Rptr. 411 (1989) (where plaintiff claimed that agent had a duty to inform the insured as to the effective date of a cancellation, agent's duty should be determined by the jury); *Martini v. Beaverton Ins. Agency, Inc.*, 314 Or. 200, 838 P.2d 1061 (1992) (relationship between agent and insured provides a context in which to decide whether the parties exercised reasonable care in light of foreseeable risks).

The more moderate route treads a desirable middle ground. On the one hand, insurance agents should not carry the overwhelming responsibility of explaining to insureds every provision of every policy. On the other hand, insurance agents should not be able to avoid exercising a reasonable amount of care for their clients. See, *Coe, supra*; *Martini, supra*. It is undeniable that many insurance contract provisions are not written in plain English and cannot be understood without some level of expertise. We therefore find most persuasive those cases which recognize that an agent has a legal duty to explain policy terms, but also require certain circumstances to trigger that duty. The triggering circumstances cannot be stated as an arbitrary list, but must, of necessity, be developed on a case-by-case basis.

We find that the circumstances underlying the present action are sufficient to trigger, on Williams' part, a duty to explain Dahlke's deductible. Williams had been Dahlke's agent for at least 8 years. In the 1984 overspray incident, multiple cars were

damaged. As a result, the insurer invoked the deductible provision of Dahlke's policy, and Dahlke was required to pay a per-occurrence deductible. Dahlke reported his 1984 overspray loss to Williams. A reasonable inference from this fact is that Williams knew that Dahlke had paid a per-occurrence deductible.

When an agent knows that a provision of the insured's policy has been invoked, the agent has a duty to explain any changes to that provision appearing in a subsequent policy. Because Williams was Dahlke's agent during the 1984 overspray incident and knew that Dahlke had paid a per-occurrence deductible, Williams had a duty to explain to Dahlke that his subsequent policy or policies included a different type of deductible—a per-claim deductible. It is undisputed that Williams failed to fulfill this duty.

We next address whether Williams and Zimmer Insurance are insulated from liability by Dahlke's failure to read his policy.

We have previously addressed this issue in the context of a negligent misrepresentation claim and have enumerated two rules. First, an insured has no right to rely on an agent's patently absurd interpretation of a policy. Second, an insured may rightfully rely on an agent's plausible interpretation of a policy, so long as the interpretation does not conflict with the printed policy. *Flamme v. Wolf Ins. Agency*, 239 Neb. 465, 476 N.W.2d 802 (1991); *Bayer v. Lutheran Mut. Life Ins. Co.*, 184 Neb. 826, 172 N.W.2d 400 (1969). The rationale for these rules is not difficult to discern: if an insured could have read and understood the policy, then the insured should be charged with knowledge of the policy's contents. Cf. *Flamme, supra*. By analogy to our misrepresentation rules and the rationale for those rules, we now hold that absent a reason for the insured's failure to read the policy, if a policy provision is clear and unambiguous, then the insured's failure to read the policy provision will insulate the agent from liability for failure to explain that provision.

This holding comports with decisions from other state courts. See, *Underwriters Adjusting Co. v. Knight*, 193 Ga. App. 759, 389 S.E.2d 24 (1989) (insured's claim against agent for failure to procure proper insurance is defeated by the

insured's failure to read the policy); *Ga. Farm Bureau Mut. Ins. Co. v. Arnold*, 175 Ga. App. 850, 334 S.E.2d 733 (1985) (insured's claim against agent for failure to procure proper insurance was not defeated because a reading of the policy would not have revealed the defect); *Barnes v. Levenstein*, 160 Ga. App. 115, 286 S.E.2d 345 (1981) (insured's claim against agent for failure to procure proper coverage is defeated because reading the policy would have informed the insured of the lacking coverage and because there was no good reason why the insured had failed to read the policy); *Heritage Manor of Blaylock v. Petersson*, 677 S.W.2d 689 (Tex. App. 1984) (insured had a duty to read the policy and, failing to do so, would be charged with knowledge of its contents). See, also, *Town & Country Mut. Ins. Co. v. Savage*, 421 N.E.2d 704 (Ind. App. 1981) (insured's failure to read the policy can be raised as contributory negligence); *Martini v. Beaverton Ins. Agency, Inc.*, 314 Or. 200, 838 P.2d 1061 (1992) (insured's failure to read the policy can be raised as contributory negligence). Several courts have held, similarly, that an agent has no duty to explain clear and unambiguous policy terms. See, *Bush v. Mayerstein-Burnell Financial Services*, 499 N.E.2d 755 (Ind. App. 1986); *Banker v. Valley Forge Ins. Co.*, 363 Pa. Super. 456, 526 A.2d 434 (1987).

In the present action, Dahlke admitted that he did not read the policy which was in force at the time of the 1988 overspray incident. However, there appears to be a good reason why Dahlke failed to read the policy. According to Dahlke's deposition testimony, the policy became effective either the day of or the day before the overspray incident. Dahlke had received verbal confirmation from Williams that the policy was in force, but had not received a copy of the policy. Williams and Zimmer Insurance have presented no other evidence to suggest that Dahlke had any other opportunity, prior to the 1988 overspray incident, to read the policy. If Dahlke did not have an opportunity to read the policy, then he cannot be charged with the knowledge of its terms, including the deductible provision.

We recognize the possibility that Dahlke could have read earlier policies and discovered that his deductible was per claim and not per occurrence. Dahlke admitted that for two policy

periods prior to the 1988 overspray incident, his policies included per-claim deductibles. If those provisions are clear and unambiguous, then Williams and Zimmer Insurance are insulated from liability; if those provisions are *not* clear and unambiguous, then Williams and Zimmer Insurance are *not* insulated from liability. Because the record does not contain copies of the two prior policies, we are unable to determine whether the deductible provisions are clear and unambiguous. Therefore, Williams and Zimmer Insurance are not entitled to summary judgment as a matter of law.

The decision of the trial court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.