IN THE NEBRASKA COURT OF APPEALS

MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)


RATH V. STATE FARM MUT. AUTO. INS. CO.


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


DENNIS J. RATH, APPELLANT,

V.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
A CORPORATION, AND GLORIA LEDROIT, APPELLEES.


Filed May 19, 2015.    No. A-14-719.


Appeal from the District Court for Buffalo County: JOHN P. ICENOGLE, Judge. Affirmed.

Kent A. Schroeder, of Ross, Schroeder & George, L.L.C., for appellant.

Rex A. Rezac and Elizabeth A. Culhane, of Fraser Stryker, P.C., L.L.O., for appellees.


MOORE, Chief Judge, and PIRTLE and BISHOP, Judges.

BISHOP, Judge.

Dennis J. Rath ("Rath") was involved in an automobile accident which resulted in the death of the other driver. At the time of the accident, Rath had an automobile insurance policy through State Farm Mutual Auto Insurance Company ("State Farm"), which he had purchased though Gloria LeDroit ("LeDroit"), a State Farm agent. Pursuant to a settlement with the decedent's estate, State Farm paid its policy limit of $50,000 and Rath personally paid $25,000. Rath then filed a claim against State Farm and LeDroit seeking damages for their failure to provide him with adequate insurance coverage. Rath also sought reimbursement for attorney fees he incurred in defending his interest. The district court for Buffalo County granted State Farm and LeDroit's motion for summary judgment and dismissed Rath's complaint with prejudice. We affirm.

BACKGROUND

In March 1995, Rath met with LeDroit, a licensed insurance agent for State Farm, to obtain automobile liability insurance. Rath had previously been insured by American Family, but contacted LeDroit in an effort to obtain lower insurance premiums. LeDroit quoted Rath a policy with similar types of coverage and limits as he had with American Family--bodily injury liability limits of $50,000 per person and $100,000 per accident. Because LeDroit quoted Rath with lower premiums than he was paying at American Family, Rath elected to switch insurers and purchased a policy from State Farm.

In September 2010, Rath was involved in a motor vehicle accident which resulted in the death of the other driver. Because of a potential wrongful death claim, Rath retained the services of an attorney. Ultimately, a settlement with the other driver's estate was reached prior to the initiation of any litigation. As part of the settlement, State Farm paid its policy limit of $50,000, and Rath personally paid $25,000.

On March 2, 2012, Rath filed a complaint against State Farm and LeDroit to recover the $25,000 he personally had to pay to the other driver's estate, and for attorney fees he incurred. In his first and second causes of action, Rath alleged that LeDroit acted negligently and/or breached an implied contract by providing Rath a policy with inadequate liability coverage. In those two causes of action, Rath specifically alleged that LeDroit: affirmatively advised him to purchase liability insurance coverage in an amount inadequate to protect him from personal liability; failed to obtain adequate liability insurance for him; failed to warn him of the risk associated with purchasing the amount of liability insurance coverage which LeDroit advised him to purchase, and that such an insurance purchase would be inadequate to protect him from personal liability; failed to advise him of the availability of liability coverage in an amount sufficient to protect him from personal liability; and failed to apprise him of liability limits available from State Farm and the costs thereof. Rath also alleged that he and LeDroit had entered into an implied contract under which LeDroit would advise him of his insurance needs and recommend proper, complete, and adequate insurance coverage, but that LeDroit breached that implied contract. On the first and second causes of action, Rath sought a judgment against State Farm and LeDroit in the amount of $25,000 plus interest and costs. In his third cause of action, Rath alleged that State Farm breached the insurance contract by failing and refusing to provide an attorney to defend Rath's interest, causing Rath to hire counsel at his own cost. On the third cause of action, Rath sought a judgment against State Farm in the amount of $25,000 for attorney fees, plus interest and costs.

On March 20, 2014, State Farm and LeDroit filed a motion for summary judgment, alleging that there were no genuine issues of material fact and that they were entitled to judgment as a matter of law.

A hearing was held on July 3, 2014. Received into evidence were the depositions of LeDroit, Danny LeDroit ("Danny"), Mary Paladino, Rath, Trudy Rath ("Trudy"), and the affidavit of Laura Tague.

LeDroit testified that the Raths were walk-in clients and that Rath came in and said that they were looking for cheaper insurance and wanted a quote. LeDroit told Rath to bring in his current American Family policy and "we'll take a look at it and see what we can do." LeDroit

testified that her husband Danny "most likely" met with Rath regarding his American Family policy. She testified that their procedure was to give a quote equal to current coverage and then explore the possibility of changes with the client; her staff (including Danny) was trained to do that, and she assumes that is what was done in this case. She testified that she always thought the Raths' liability limits were too low, and that she pointed such out to the Raths (but she doesn't remember how many times or if she sent out correspondence in that regard). She testified that in May 2008 the Raths did not show up for a "family insurance checkup" where their policies would have been reviewed and needs addressed.

Danny is LeDroit's husband, and worked in her office. Danny is also a licensed insurance agent. Danny testified that Rath came into LeDroit's office in 1995 seeking cheaper insurance. Danny testified that Rath told him he had limits of "50/100/50" with American Family. Danny told Rath they recommended at least "100/300/100," but when Rath saw that those premiums were higher than what he was already paying and that he wanted to save money, Danny quoted him premiums for limits of "50/100/50," which is what Rath chose. Danny testified that if someone asked for a quote and they had low limits, "we always indicate to them that we always recommend at least 100/300/100." Danny also testified that they sent a "family insurance checkup" letter to the Raths in 2008, inviting them to come in and review their insurance coverages, but that the Raths did not show up for their scheduled appointment.

Rath testified that he started using State Farm in 1995 because he was looking for lower premiums than he was paying with American Family. Rath believed he met with LeDroit, and no one else, when he brought in his policies and premium schedules from American Family; he said "this is what I've got with these people, show me what you can do with State Farm." Rath testified that his objective in getting a quote from State Farm was to see if he could get a lower premium. He testified that in the initial face-to-face with LeDroit, there was no discussion regarding the limits of coverage he either had with American Family or wanted from State Farm; LeDroit just gave him quotes for the same coverage. Upon questioning, he agreed that he wanted State Farm to quote the same limits and same type of insurance. Rath testified that he later met with LeDroit to go over the quotes and premiums, and that he does not remember any discussion about the liability limits on the automobile policies. Rath testified that after signing with State Farm, there were no subsequent conversations with anyone at LeDroit's office about types of coverage, limits, etc., and no one ever explained how much coverage he should have.

Rath testified that in 2007 he sent emails to LeDroit letting her know that he was shopping around for insurance because his workers' compensation premiums (which he also had through State Farm) were too much. He subsequently obtained workers' compensation insurance through Silver Stone, and had them review his auto policies as well. But "[Silver Stone] just advised me that, you know, even though I was looking for lesser premiums, better coverage or whatever, that their premiums still would have been higher than what State Farm is." Once Rath saw that the automobile quotes from Silver Stone were quite a bit higher, he decided to stay with State Farm. Rath testified that Silver Stone quoted him liability limits of $300,000; he did not remember asking them to quote higher limits, did not remember asking them why they quoted the higher limits, and did not recall anyone at Silver Stone saying he should have higher limits.

Mary Paladino is a customer service representative for the personal lines department (which includes auto insurance) at Silver Stone Group. She testified that when a new client comes in, they review and discuss their needs. While she did not remember communications with the Raths, she testified that the 2009 emails presented to her in the deposition showed that the Raths wanted auto quotes. At the bottom of one of the emails was some sort of handwritten note (in Paladino's writing) to Paladino's coworker regarding the Raths' low limits on their current policies. Paladino does not recall having a discussion with Rath regarding the limits he provided, but testified that if they would have offered Rath a quote it would have been her practice to mention to him that we thought his limits were low and say "We notice what your limits of liability are. We will quote you higher limits of liability."

Laura Tague is a claims representative for State Farm. Tague stated that on September 10, 2010, Rath was insured under a State Farm automobile liability insurance policy with limits of $50,000 per person and $100,000 per accident; a copy of the policy was attached to her affidavit. Tague stated that on September 10, Rath was involved in a motor vehicle accident in which the other driver died. Tague stated that the estate of the deceased driver made a wrongful death claim against Rath and she was assigned by State Farm to handle the wrongful death claim. Tague stated that on October 21, State Farm received notice that Rath had retained an attorney to personally represent him in connection with the September 10 collision. State Farm did not participate in the selection of Rath's attorney to personally represent Rath and had no input into the terms of his engagement. Tague stated that on April 13, 2011, Rath's attorney contacted State Farm and said that State Farm contractually owed him attorney fees in connection with his representation of Rath. Also on April 13, Tague sent a letter to Rath and his attorney stating that, "because a suit had not yet been filed against Rath, State Farm was not contractually bound to provide him with an attorney and further, that if a suit was filed against Rath, State Farm would provide him with an attorney chosen by State Farm." Tague stated that State Farm, Rath, the deceased driver's estate and insurance company ultimately reached a settlement without a lawsuit having been filed against Rath. Pursuant to the terms of the settlement, State Farm paid its policy limit of $50,000 to the estate, and Rath personally paid $25,000.

Trudy testified that after her husband's accident, she talked to State Farm's claims adjuster, Laura Herfindahl. Trudy testified that when Herfindahl told her that they did not have enough insurance and that they should seek an attorney, Trudy told Herfindahl that she already had. Trudy testified that Herfindahl told her to expect the other person's insurance company to be seeking money (personal assets) and to make sure that they talked to their attorney to make sure they were protected.

In its judgment filed on July 27, 2014, the district court granted summary judgment in favor of State Farm and LeDroit and dismissed the matter with prejudice.

Rath has filed this timely appeal.

ASSIGNMENTS OF ERROR

Rath assigns that the district court erred in (1) granting State Farm and LeDroit's motion for summary judgment, (2) finding that State Farm and its agents had no "duty to apprise policy

holders of the attributes and consequences of liability claims," brief for appellant at 2, and (3) finding that State Farm had no obligation to pay Rath's attorney fees.

## STANDARD OF REVIEW

Summary judgment is proper if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Latzel v. Bartek*, 288 Neb. 1, 846 N.W.2d 153 (2014). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id*.

## ANALYSIS

*"Duty" With Regard to Selection of Insurance Policy.*

Rath concedes that "it is the duty of the consumer, or the insured to advise the agent, or the insurer, as to the level of desired coverage." Brief for appellant at 4. See, also, *Polski v. Powers*, 221 Neb. 361, 377 N.W.2d 106 (1985) (it is the duty of an insured to advise the agent as to the insurance he wants, including the limits of the policy to be issued). The court in *Polski, supra*, said "We believe it would be an unreasonable burden to impose upon insurance agents a duty to anticipate what coverage an individual should have, absent the insured's requesting coverage in at least a general way." 221 Neb. at 364, 377 N.W.2d at 108.

In *Dahlke v. John F. Zimmer Ins. Agency*, 245 Neb. 800, 515 N.W.2d 767 (1994), the Nebraska Supreme Court reiterated that the insured has a duty to advise the insurance agent as to the desired insurance. In *Dahlke*, the plaintiff sued his insurance agent and the agent's employer for breach of agency and negligence, claiming that his agent failed to procure the proper insurance, namely a policy with a "per occurrence" deductible rather than a "per claim" deductible. Dahlke had a loss under the policy that resulted in several claims and he was required to pay a separate deductible for each claim. It was undisputed that Dahlke told his agent he wanted a $1,000 deductible and there was no discussions about the difference between "per claim" and "per occurrence" deductibles. The Supreme Court said:

> Nebraska law on this issue is well settled. When an insured asks an insurance agent to procure insurance, the insured has a duty to advise the insurance agent as to the desired insurance. An insurance agent has no duty to anticipate what coverage an insured should have.
>
> Dahlke had a duty to inform Williams of the deductible he wished to obtain. Having failed to inform Williams, Dahlke cannot now complain that Williams failed to procure the proper type of deductible. Williams obtained the type of insurance he was instructed to procure.

*Dahlke*, 245 Neb. at 803-04, 515 N.W.2d at 770.

Before he obtained automobile insurance with State Farm, Rath was insured by American Family under a policy with bodily injury liability limits of $50,000 per person and $100,000 per

accident. Rath contacted LeDroit to see if he could get a lower premium with State Farm. Rath testified that when he met with LeDroit, he brought in his American Family policies and premium schedules. During his deposition, Rath testified as follows:

A. . . . I think there was 50,000, 100,000, 50 --

Q. You're talking about on the auto policy?

A. Yeah, yeah.

Q. Okay. That's what you had with American Family; right?

A. Auto policy, right, right.

Q. Did you tell Gloria LeDroit that you wanted the same coverage as -- same limits?

A. I believe. I just would -- mentioned to do what you can do for me, see what I can -- what I need, stuff like that.

Q. Okay. Were you talking about see if State Farm could have lower premiums?

A. Yeah, yeah but in a sense the same coverage that I had with American Family.

Q. I'm sorry, can you say that again?

A. The same coverage that I had with American Family.

Q. That's what you wanted State Farm to quote?

A. Right.

Q. And by coverages do you mean the types of insurance or the limit -- limits of coverage? Or both?

A. Well, yeah, actually, both.

Q. Sure.

A. I needed coverage on collision, medical, comp, uninsured, insured, you know.

Q. And from what you're telling me, you wanted a quote from State Farm with those -- for those same types of coverages with the same limits you had with American Family?

A. Uh-huh.

Q. Correct?

A. Correct. I'm sorry.

Rath admitted that he did not ask LeDroit anything about the liability limits. Thus, Rath, by his own testimony, sought insurance quotes from State Farm on specific policy coverage and limits, the same coverage and limits he had with American Family. LeDroit provided him with such quotes, and because State Farm's premiums were lower, Rath switched his automobile insurance to State Farm. (Although in his complaint, Rath alleged that LeDroit affirmatively advised him to purchase the policy with limits of $50,000 per person and $100,000 per occurrence, and that he relied upon her recommendations in obtaining his policy, the evidence presented at the summary judgment hearing contradicted such allegations and clearly established that it was Rath who specified the type of quote he wanted from LeDroit.) LeDroit had no duty to anticipate what coverage Rath should have. See *Dahlke v. John F. Zimmer Ins. Agency*, 245 Neb. 800, 515 N.W.2d 767 (1994). See, also, *Polski v. Powers*, 221 Neb. 361, 377 N.W.2d 106 (1985). LeDroit satisfied her obligation to Rath by providing a policy with the coverage and limits that he requested.

In his brief, Rath states that *Polski, supra*, suggests that an agent may assume the duty to anticipate coverage when an insured requests coverage in at least a "general way." Brief for appellant at 5. However, as stated previously, Rath sought quotes from LeDroit and State Farm for specified coverage and limits--the same coverage and limits he had with American Family which were bodily injury liability limits of $50,000 per person and $100,000 per accident. Because Rath made a specific request, any potential duty shifting is not applicable in this case.

Rath also asks us to expand Nebraska case law to recognize the "professional judgment" rule for insurance agents, which would require them to address coverage issues with the "highest professional standard because the knowledge of the agent and insured are disparate." Brief for appellant at 7. We decline to do so. We also note that to the extent Rath argues LeDroit should have advised him on higher policy limits, the record establishes that when Silver Stone quoted higher policy limits to Rath he opted to stay with State Farm. Thus, Rath knew higher limits were available, but he elected to stay with his policy that had a lower premium. (Because on summary judgment we view the evidence in a light most favorable to Rath, we will ignore the testimony of Danny and LeDroit that they did advise Rath that his limits were too low.) Rath also argues that the advent of uninsured and underinsured insurance coverage has changed the dynamics of the relationship between a potential insured and the insurance agent, and the agent has a duty to explain to the potential insured the nature and extent of underinsured and uninsured coverage. Brief for appellant at 11. Rath cites no authority for this proposition and once more seems to be asking us to expand Nebraska law; we again decline to do so.

Rath had a duty to advise LeDroit as to the desired insurance. Rath sought quotes from LeDroit and State Farm for the same coverage and limits he had with American Family which were bodily injury liability limits of $50,000 per person and $100,000 per accident. LeDroit satisfied her obligation to Rath by providing a policy with the coverage and limits that he requested.

*Attorney Fees.*

Rath argues that the district court erred in finding that State Farm had no obligation to pay Rath's attorney fees. An insurer's duty to defend is usually a contractual duty, rather than one imposed by operation of law. *Mortgage Express v. Tudor Ins. Co.*, 278 Neb. 449, 771 N.W.2d 137 (2009). The nature of the duty to defend is defined by the insurance policy as a contract. *Id.*

Rath's State Farm insurance policy states, in relevant part:

**Insuring Agreement**
1. *We* will pay: . . . (b) attorney fees for attorneys chosen by *us* to defend an *insured* who is sued for damages; and . . . *We* have no duty to pay attorney fees and court costs incurred after *we* deposit in court or pay the amount due under this policy's Liability Coverage.
2. *We* have the right to: (1) investigate, negotiate, and settle any claim or lawsuit; . . . for damages payable under this policy's Liability Coverage.

(Emphasis in original.) Under the plain language of the policy, State Farm is not obligated to pay attorney fees unless the insured is sued for damages. Here, the claim was settled before a lawsuit was filed. Accordingly, State Farm had no contractual duty to pay Rath's attorney fees.

Furthermore, the policy clearly states that State Farm's obligation to pay attorney fees is limited to attorneys chosen by State Farm. Here, the Raths retained their own attorney without any participation or input by State Farm. Accordingly, under the circumstances in this case, State Farm did not have a contractual duty to pay the attorney fees incurred by Rath.

We note that Rath claims that State Farm waived or modified these express contractual provisions during alleged conversations between its agent, Laura Herfindahl, and Rath's wife, Trudy. Trudy gave the following testimony regarding those alleged conversations:

Q. . . . After the accident, it's my understanding that you had some communications with State Farm's claim adjuster; is that right?

A. Yes.

Q. And that was a gal named Laura Herfindahl?

A. Yes.

Q. What generally did those discussions involve?

A. . . . I told her about the accident. And in the course of the conversation, she asked me about our coverage . . . And she said to me that we don't have enough insurance and that I should seek an attorney. *And I told her that I already had.*

Q. Okay. On the issue of the adequacy of your insurance limits, did you have any other conversations with this Laura Herfindahl or anybody else at State Farm after the accident?

A. I had a couple of conversations with her. I don't recall each time what was said.

Q. Sure.

A. We went over the accident. And then there was another gal I spoke to about the accident. And she went over the policy of not having enough coverage and that State Farm had assumed us to have 60 percent liability and that to be prepared for them -- the other person in the accident's company to be seeking money.

Q. Personal assets?

A. Yeah. And she told me to make sure we talked with our attorney to make sure we were protected.

(Emphasis added.) Thus, it is clear that the Raths retained counsel prior to any alleged advice from State Farm to seek counsel.

Ordinarily, to establish a waiver of a legal right, there must be a clear, unequivocal, and decisive act of a party showing such a purpose, or acts amounting to an estoppel on his or her part. *D & S Realty v. Markel Ins. Co.*, 280 Neb. 567, 789 N.W.2d 1 (2010). A party may waive a written contract in whole or in part, either directly or inferentially. *Id.* A party may prove the waiver by (1) a party's express declarations manifesting the intent not to claim an advantage or (2) a party's neglecting and failing to act so as to induce the belief that it intended to waive. *Id.* "If the evidence shows that the insurer has waived a policy provision, it may be estopped from denying liability where, by its course of dealing and the acts of its agent, it has induced the insured to pursue a course of action to his detriment." *Id.* at 587, 789 N.W.2d at 17. Here, State Farm did not induce the Raths to pursue a course of action to their detriment, because the Raths retained their attorney prior to any conversations with Herfindahl; thus they did not hire their attorney because they were

advised to do so. Furthermore, in April 2011, State Farm claims representative Tague sent a letter to Rath and their attorney stating that, "because a suit had not yet been filed against Rath, State Farm was not contractually bound to provide him with an attorney and further, that if a suit was filed against Rath, State Farm would provide him with an attorney chosen by State Farm." The Raths nonetheless continued to have their attorney represent them through settlement in May 2011. Thus, the Raths cannot raise a genuine issue of fact regarding waiver.

Furthermore, the terms of the insurance agreement expressly prohibit oral modification. The Raths' policy states "2. This policy contains all of the agreements between all names insured who are shown on the Declarations Page and all applicants and: a. *us*; and b. any of *our* agents." (Emphasis in original.) And the General Terms section of the insurance contract states:

**4. Changes to This Policy**

**a. Changes in Policy Provisions**

*We* may only change the provisions of this policy by: (1) issuing a revised policy booklet, a revised Declarations Page, or an endorsement; or (2) revising this policy to give broader coverage without an additional premium charge. If any coverage provided by this policy is changed to give broader coverage, then *we* will give *you* the broader coverage as of the date *we* make the change effective in the state of Nebraska without issuing a revised policy booklet, a revised Declarations Page, or an endorsement.

(Emphasis in original.) There is no evidence that State Farm ever issued a revised policy booklet, a revised Declarations Page, or a revised endorsement regarding additional circumstances under which the Raths would be entitled to payment of attorney fees. Nor is there any evidence that State Farm generally adjusted the attorney-fee coverage available to Nebraska policy-holders. And Rath does not argue that State Farm made broader attorney-fee coverage generally available at any relevant period.

Rath encourages us to find that portions of the insuring agreement are void against public policy because it promotes and encourages unnecessary lawsuits and discourages pre-litigation mediation. Rath cites no authority for his argument and we decline to engage in a public policy analysis.

## CONCLUSION

For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of State Farm and LeDroit.

AFFIRMED.