IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


HANSON V. MCCAWLEY


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


JOHN F. HANSON, APPELLANT,

V.

PAM MCCAWLEY ET AL., APPELLEES.


Filed December 6, 2016.    No. A-15-890.


Appeal from the District Court for Douglas County: J. MICHAEL COFFEY, Judge. Affirmed.

Joel M. Carney and Brian D. Moore, of Larson, Kuper, Wenninghoff & Carney, P.C., L.L.O., for appellant.

David A. Dudley, Andrea D. Snowden, and Emily R. Motto, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellees Pam McCawley and Silverstone Group Incorporated.

Michael K. Huffer, David A. Blagg, and John A. McWilliams, of Cassem, Tierney, Adams, Gotch & Douglas, and David E. Walker and Ryan J. Rodman, of Walker, Wilcox & Matousek, L.L.P., for appellees Those Certain Underwriters at Lloyd's London, Signatory to Certificate No. NPPR08-000874.


INBODY, RIEDMANN, and BISHOP, Judges.

RIEDMANN, Judge.

INTRODUCTION

John F. Hanson appeals the order of the Douglas County District Court which entered summary judgment in favor of Pam McCawley, Silverstone Group Incorporated (Sileverstone), and those certain underwriters at Lloyd's London, signatory to certificate No. NPPR08-000874, each for themselves and no other (Lloyd's). Finding no merit to the arguments raised on appeal, we affirm.

BACKGROUND

McCawley is an employee of Silverstone, a corporation that provided insurance products to Hanson beginning in 1999. In 2001 or 2002, Hanson purchased a residence located on Decatur Street in Omaha, Nebraska and asked McCawley to obtain homeowner's insurance for the residence. At one point, the Decatur Street residence was insured under a "Chubb masterpiece policy," which is an enhanced homeowner's policy geared to high net worth, high value homes. At another time, the residence was insured under a standard policy with Travelers. In 2003, Hanson filed a claim for water damage caused by an overflowing toilet, and Travelers paid the claim. Hanson filed a second water claim at some point during his business relationship with McCawley, which was also paid by the insurance company. The record is unclear as to when this claim was filed, which policy was in effect at the time, and at which property the loss occurred. The insurance policy on the Decatur Street residence lapsed for nonpayment of premium from April to July in either 2007 or 2008.

In 2007, Hanson moved to a new home, and the Decatur Street residence became vacant while it was placed on the market for sale. Hanson and McCawley discussed the need to secure a new insurance policy for the residence due to the vacancy, and Hanson understood that the risk would be different and that the policy would likely be more expensive because of the increased risk. At his deposition, Hanson testified that McCawley knew what he expected when looking for a new insurance policy for the vacant residence and that he told her he wanted "the best there is" when it came to his new policy. When discussing the policy terms, Hanson said at his deposition, "The bottom line is I'm paying $7,000 every six months, I'm thinking it's the best insurance policy you can get for my property." He explained that he and McCawley had the understanding that he wanted full replacement coverage for his property, meaning if the house were to burn down, the policy limits were sufficient to cover the cost to rebuild it.

McCawley attempted to secure coverage with at least three insurers, but none of them would agree to insure the Decatur Street residence because it was vacant, it had a loss history, it had a prior lapse in coverage, and Hanson had a history of nonpayment. Finally, McCawley obtained the policy at issue from Lloyd's, which was the only policy she was able to secure for the Decatur Street residence. The Lloyd's policy was a "named perils" policy, meaning that coverage for a loss was provided only if the loss was the result of one of the 11 perils specifically named in the policy. The relevant policy was effective from July 2008 through January 2009. The named perils did not include loss due to water damage, and McCawley testified at her deposition that there were no additional riders, water coverage options, or secondary coverage available for the policy; she obtained the only coverage available.

On October 20, 2008, Hanson went to check on the Decatur Street residence and discovered significant water damage as a result of an overflowing toilet in a second floor bathroom. He submitted a claim under his Lloyd's insurance policy, but in February 2009, Hanson was notified that his claim had been denied. He ultimately sold the residence in January 2009 for $659,000 without repairing the water damage.

Hanson commenced this action in February 2010. In the operative complaint, he alleged that he relied on McCawley to procure proper and full insurance coverage for the residence and that she agreed to procure insurance to suit his needs. He claimed that she knew or should have

known that he would need comprehensive homeowner's insurance including coverage for all types of casualties in order to be fully covered. Hanson alleged that after obtaining coverage for him through Lloyd's, McCawley advised him that he was fully covered and never informed him that the policy did not provide comprehensive coverage for water losses. He asserted that as a result of McCawley's failure to procure insurance, he sustained a loss of insurance benefits in an amount exceeding $225,000.

McCawley, Silverstone, and Lloyd's filed motions for summary judgment. After holding a hearing, the district court entered an order. Therein, it found that Hanson gave no specific instructions to McCawley regarding the type of policy he desired, other than providing her guidance by saying he wanted "the best there is," and that McCawley obtained the best available policy for Hanson given his poor payment history, previous lapse in coverage, prior claim history, and the home's vacancy. The court thus determined that McCawley and Silverstone did not breach their duty to Hanson to procure insurance. Additionally, the court held that McCawley and Silverstone did not breach a duty to Hanson to explain the policy terms, because no duty to explain was triggered because Hanson never asked for water coverage and was aware the policy terms would be different from those of his prior policies. Therefore, the district court concluded there were no genuine issues of material fact and granted the motions for summary judgment. Hanson now appeals to this court. He assigns no error and makes no argument as to the entry of summary judgment in favor of Lloyd's. We therefore limit our discussion to judgment in favor of McCawley and Silverstone.

## ASSIGNMENTS OF ERROR

Hanson assigns, renumbered, that the district court erred in (1) finding that McCawley and Silverstone did not breach a duty to Hanson to procure insurance, (2) finding that McCawley and Silverstone did not breach a duty to Hanson to explain the new policy terms, (3) finding that the policy was unambiguous, (4) determining there were no genuine issues of material fact, and (5) granting the defendants' motions for summary judgment.

## STANDARD OF REVIEW

We affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *Rice v. Poppe*, 293 Neb. 467, 881 N.W.2d 162 (2016). In reviewing a summary judgment, we view the evidence in the light most favorable to the party against whom the judgment was granted, and give that party the benefit of all reasonable inferences deducible from the evidence. *Id*.

## ANALYSIS

*Duty to Procure Insurance.*

Hanson argues that the district court erred in finding that McCawley and Silverstone did not breach a duty to procure insurance. We disagree.

An insurance agent or broker who agrees to obtain insurance for another but negligently fails to do so is liable for the damage proximately caused by such negligence; the measure of damages is the amount that would have been due under the policy if it had been obtained by the

- 3 -

agent or broker. *Flamme v. Wolf Ins. Agency*, 239 Neb. 465, 476 N.W.2d 802 (1991). Thus, an insurance agent or broker owes a duty to obtain the insurance requested by the insured.

When an insured asks an insurance agent to procure insurance, the insured has a duty to advise the insurance agent as to the desired insurance. *Dahlke v. John F. Zimmer Ins. Agency*, 245 Neb. 800, 515 N.W.2d 767 (1994). An insurance agent has no duty to anticipate what coverage an insured should have. *Id*. The Nebraska Supreme Court has found that it would be an unreasonable burden to impose upon insurance agents a duty to anticipate what coverage an individual should have, absent the insured's requesting coverage in at least a general way. *Polski v. Powers*, 221 Neb. 361, 377 N.W.2d 106 (1985).

In the present case, the undisputed facts demonstrate that the insurance company denied Hanson's claim based on its position that the policy offered no coverage for damage caused by an overflowing toilet. The question for us is whether Hanson's request for "the best there is" is specific enough to communicate to McCawley that he wanted an all-risk policy that covered water losses including those caused by an overflowing toilet.

In *Dahlke v. John F. Zimmer Ins. Agency, supra*, the insured suffered a covered loss in 1984, which damaged four to six vehicles, and paid a single deductible, pursuant to a "per-occurrence" deductible contained in his policy. When the insured suffered a similar loss in 1988 which resulted in damage to 25 vehicles, he was informed that under his new policy, he must pay a separate deductible for each vehicle because of a "per-claim" deductible provision in his policy. When the insured and his agent had discussed obtaining new coverage prior to the 1988 claim, the insured informed his agent that he wanted a $1,000 deductible, but they never discussed the difference between per-claim and per-occurrence deductibles. The insured sued his agent, arguing that the agent failed to procure the proper insurance. The Supreme Court disagreed, holding that the insured failed to inform the agent of the deductible he wished to obtain and thus could not complain that the agent failed to procure the proper type of deductible.

Likewise in the present case, Hanson never informed McCawley that he wanted an all-risk policy that would provide coverage for water loss due to an overflowing toilet. His request for "the best there is" lacks the specificity required to alert McCawley as to Hanson's desired coverage. McCawley had no duty to anticipate the specific perils Hanson wanted included in his policy, especially when she made Hanson aware that the risk of insuring a vacant residence was higher and required different coverage.

In his deposition, Hanson repeatedly testified that he requested "full coverage" on the property, but by "full coverage," Hanson explained that he meant full replacement coverage with respect to the policy limits as opposed to requesting a policy covering all risks, including various water claims. He argues that McCawley informed him he was "fully covered" and he had a right to rely on her representation, but even Hanson explained that, to him, full coverage meant the limits of replacement cost, not the specific perils against which he was covered. Hanson understood that the risk was changing because of the home's vacancy and that a new policy was required. If he wanted to ensure he had coverage for water damage caused by an overflowing toilet, the duty was on him to request such coverage from McCawley in at least a general way. The record contains no indication that Hanson requested an all-risk policy as opposed to the named perils policy that was ultimately issued.

As the Supreme Court ruled in *Dahlke*, the insured has a duty to inform the agent of the specific type of coverage he wishes to obtain. Here, Hanson failed to inform McCawley, and thus, he cannot now complain that she failed to procure the proper coverage for him. We therefore find that the district court did not err in determining that McCawley and Silverstone did not breach their duty to procure insurance.

*Duty to Explain Policy Terms and Policy Ambiguity.*

Hanson next argues that the district court erred in finding that McCawley and Silverstone did not breach their duty to explain the terms of the Lloyd's policy to him. We find there was a breach of duty to explain, but McCawley and Silverstone are insulated from liability because of Hanson's failure to read the unambiguous policy terms.

An insurance agent has a legal duty to explain policy terms, but certain circumstances are required to trigger that duty. *Dahlke v. John F. Zimmer Ins. Agency*, 245 Neb. 800, 515 N.W.2d 767 (1994). The triggering circumstances cannot be stated as an arbitrary list, but must, of necessity, be developed on a case-by-case basis. *Id*. However, in *Dahlke*, the Supreme Court specifically held that when an agent knows that a provision of the insured's policy has been invoked, the agent has a duty to explain any changes to that provision appearing in a subsequent policy. See *id*.

In the present case, Hanson previously filed two successful water claims, one of which was the result of an overflowing toilet. Because McCawley was Hanson's agent at the time and was aware of the claims, she had a duty to explain to Hanson that the policy issued by Lloyd's did not include coverage for water claims. McCawley admitted that she did not specifically explain to Hanson the differences between the Lloyd's policy and his previous policies; therefore, she did not fulfill her duty. However, McCawley and Silverstone are insulated from liability by Hanson's failure to read his policy as explained below. See *Dahlke v. John F. Zimmer Ins. Agency, supra*.

An insured has no right to rely on an agent's patently absurd interpretation of a policy but may rightfully rely on an agent's plausible interpretation of a policy, so long as the interpretation does not conflict with the printed policy. See *id*. The rationale for these rules is that if an insured could have read and understood the policy, then the insured should be charged with knowledge of the policy's contents. *Id*. Therefore, absent a reason for the insured's failure to read the policy, if a policy provision is clear and unambiguous, then the insured's failure to read the policy provision will insulate the agent from liability for failure to explain that provision. *Id*.

Hanson testified in his deposition that McCawley told him there were no changes in coverage. He could rightfully rely upon that interpretation of the policy as long as it did not conflict with the clear and unambiguous language of the policy. We therefore must determine whether the language of the policy is clear and unambiguous.

Whether the language in an insurance policy is ambiguous presents a question of law. *Poulton v. State Farm Fire & Cas. Cos.*, 267 Neb. 569, 675 N.W.2d 665 (2004). An insurance policy must be read in its entirety and the words must be given their plain and proper meaning. *Howard v. Blue Cross Blue Shield*, 242 Neb. 150, 494 N.W.2d 99 (1993). A contract, such as an insurance policy, is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *Poulton v. State Farm Fire & Cas. Cos., supra*. Moreover, while an ambiguous insurance policy will be construed

in favor of the insured, ambiguity will not be read into policy language which is plain and unambiguous in order to construe against the preparer of the contract. *Id.*

Hanson argues that the policy is ambiguous because even McCawley, Silverstone, and Lloyd's cannot agree on its meaning. There is no evidence in our record, however, of any disagreement between McCawley and Lloyd's regarding the interpretation of the policy. McCawley testified in her deposition that the loss was not covered because it did not arise out of one of the 11 named perils. Hanson testified that Lloyd's denied coverage because the loss was caused by a sewer backup. Lloyd's plead in its answer that the loss was not covered because it was not one of the 11 named perils, and plead the sewer backup exclusion as an alternate basis for the denial. A sewer backup is not listed as a named peril; therefore, Lloyd's' reason for denial is not inconsistent with that of McCawley.

Hanson received a copy of the policy prior to the October 2008 loss. The policy provides, "We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." The declaration page of the policy indicates that the covered causes of loss are "basic." Within the policy, the section entitled "Causes of Loss - Basic Form" provides that when "basic" is shown in the declaration page, covered causes of loss include the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; sprinkler leakage, meaning leakage or discharge of any substance from an automatic sprinkler system; sinkhole collapse; and volcanic action.

Because the policy terms are clear that the insured's property is covered only for damages caused by the listed perils, the policy can be described as providing "specific perils" or "named perils" coverage. See *Poulton v. State Farm Fire & Cas. Cos.*, 267 Neb. 569, 675 N.W.2d 665 (2004). A specific perils policy excludes all risks not specifically included in the contract. *Id.* See also *Peterson v. Homesite Indemnity Co.*, 287 Neb. 48, 840 N.W.2d 885 (2013) (under a specific perils policy, also called a named perils policy, property is covered only if the occurrence arises from one of the perils listed in the policy). We find the terms of the policy are clear and have only one reasonable meaning. If the damage was not caused by one of the 11 specifically named perils, there is no coverage for the loss.

Hansen further argues that the exclusions contained in the policy make it ambiguous. In addition to specifying the covered causes of loss, the policy includes a section on exclusions, explaining that any loss or damage will not be covered if it was caused directly or indirectly by any of the excluded causes. The policy also provides that any such loss or damage is excluded regardless of any other cause that contributes in any manner to the loss. In other words, if the damage was caused by one of the 11 named perils, coverage will be excluded if any of the damage was caused by one of the named exclusions. Hanson argues that it is unclear whether the damage caused by the overflowing toilet falls under the exclusion for loss caused by sewer backup or water leakage from any part of a system or appliance containing water. However, if there is no initial grant of coverage, the applicability of an exclusion is irrelevant. See *Auto-Owners Ins. Co. v. Home Pride Cos.*, 268 Neb. 528, 684 N.W.2d 571 (2004)(stating exception to exclusion in policy was incapable of providing coverage without initial grant of coverage and operation of exclusion to preclude coverage). Thus, the language of the listed exclusions does not render the relevant policy provisions ambiguous. Rather, the policy makes clear that in order for coverage to be provided,

the loss must have been caused by one of the 11 named perils. If not, the language of the exclusions is irrelevant.

Because the policy provisions explaining the covered causes of loss are unambiguous, Hanson's failure to read the policy provisions insulates McCawley and Silverstone from liability for failure to explain the provision. Accordingly, the district court did not err in finding that the policy was unambiguous and granting summary judgment in favor of McCawley and Silverstone.

Based on our foregoing conclusions, we find no merit to Hanson's additional assigned errors that the district court erred in determining there were no genuine issues of material fact and granting the defendants' motions for summary judgment. We therefore affirm.

CONCLUSION

We conclude that McCawley and Silverstone did not breach their duty to procure insurance and are insulated from liability for failure to explain the policy provisions due to Hanson's failure to read the unambiguous policy provisions. The district court's order is therefore affirmed.

AFFIRMED.